## ROURA *v.* GOVERNMENT OF THE PHILIPPINE ISLANDS.

### ERROR TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 35.   Argued November 3, 1910.—Decided November 28, 1910.

Jurisdiction as to amount in controversy sustained on the facts disclosed in affidavits filed in this court, there being none filed in rebuttal.

The decree of the Supreme Court of the Philippine Islands denying a petition for registration of title to land on the ground that the petitioner had no legal title thereto under Spanish law, sustained.

Issue in the courts below having been confined solely to the legality of deeds on which the petitioner sought to register and which those courts held to have been fraudulently obtained and illegal, the title could not be registered on claim of quiet possession subsequent to the obtaining of those deeds and in regard to which there was no proof in the record.

8 Philippine Reports, 214, affirmed.

THE facts, which involve the right of a claimant to land in the Philippine Islands to register the title thereto, are stated in the opinion.

*Mr. Frederic R. Coudert*, with whom *Mr. Howard Thayer Kingsbury* was on the brief, for plaintiffs in error.

*Mr. Assistant Attorney General Fowler* for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the court.

Maria and Juana Roura petitioned the Court of Land Registration to register their alleged title as undivided equal owners of a piece of real estate situated in the pueblo of San Miguel de Mayumo, province of Bulacan. See for the general functions of the Court of Land Registration, *Carino* v. *Insular Government,* 212 U. S. 449; *Reavis* v. *Fianza,* 215 U. S. 16. This writ of error is prosecuted to a judgment of the Supreme Court affirming the trial court in refusing, on the opposition of the insular government, the prayer for registration.

The right to prosecute the writ is challenged on the ground that the amount involved is not sufficient to confer jurisdiction, and because there are no questions arising adequate alone to give jurisdiction. Without going into detail, we say, in view of the affidavits filed in this court concerning the value of the property, after allowing for the elements of speculation possibly entering into the amount fixed in the affidavits, we think, in the absence of affidavits in rebuttal, a sufficient showing has been made to give jurisdiction. We therefore overrule the motion to dismiss and proceed to the merits.

To reduce the case to the issues essential to be decided requires a statement of the source and history of the title whose registry was asked. We therefore at once state the salient and indisputable facts on that subject. On the twenty-fourth of March, 1885, by act before a notary public, Jose Mercado, declaring that he owned and possessed two parcels of irrigated land situated in Sibul, pueblo of San Miguel de Mayumo, sold the same for cash to Juan Roura. A few weeks after, on May third, 1885, the acting petty governor of the pueblo of San Miguel

de Mayumo issued a certificate, stating that Jose Mercado had declared to him that he possessed and owned three parcels of irrigated land in the pueblo, two of which are rice lands and the other serves as a building lot and garden, where he has his house erected; that he had possessed the land peaceably and uninterruptedly for more than thirty years, and asking that a certificate be issued as to the truth of these declarations. It was recited in the certificate that the "commune of leading citizens" was convoked and that they unanimously declared that the statements of Mercado were in effect true. The certificate was signed by the petty governor and the individual citizens who had been convoked to pass upon its statements. The purpose of obtaining the certificate does not appear, but it is inferable that it was intended to be used in a proceeding to be instituted by Mercado to obtain a recognition from the proper administrative authorities of his alleged title to the land. We say this, because four months after it appears among the files of a proceeding which, on September 10, 1885, the General Directorate of Civil Administration, under the authority vested in it by the regulations authorizing it to adjust and compose outstanding claims of title to the royal and unreclaimed lands, directed a deed to be issued to Mercado covering two tracts of land in the pueblo of San Miguel de Mayumo upon the payment of two and a fraction pesos. The sum thus to be paid, it was declared, represented ten per cent of the assessment of the land, and was exacted "for the expense of surveying and measurement to be made by a deputy surveyor of unreclaimed lands and the fees for the title deed, according to the provisions of the decree of the General Government of these islands of September 12, 1882, approved by royal order of July 25, 1884." On October 19 following, the Director General of Civil Administration executed, on behalf of the Directorate, a deed to Mercado of two

pieces of real estate situate in the pueblo of San Miguel de Mayumo, the description of the second of which pieces in a general sense conformed as to its exterior boundaries to the description of one of the pieces which had been previously sold by Mercado to Roura, and also of one of the pieces described in the certificate of the petty governor. In making this deed the Director General declared that it was executed conformably to the decree of the General Directorate of September 7, 1885, by which decree the ownership of the land had been "awarded gratuitously to Mercado." Shortly prior to the making of the deed by the Director General to Mercado, that is, on September 25, and shortly following, on November 9, deeds authorized by the General Directorate, to unreclaimed land in the pueblo of San Miguel, were made, the one in favor of Regino Pengson, and the other in favor of the parish priest of San Miguel. While the description of the land embraced by these two deeds or the surveys cotemporaneously made concerning the same are not in the record, it is established that the land which they embraced was surveyed by the official surveyor who surveyed the Mercado land, and that it was not supposed by the Directorate that there was any conflict between the three claims.

Shortly after the making of the Mercado deed it would seem that a complaint was made to the Directorate of Civil Administration by Pengson, based upon an alleged conflict between the descriptions of the land embraced in the composition sale made to him and that described in the composition deed to Mercado. The precise character and extent of this conflict is not disclosed, but it is inferable from the documentary evidence that it related to the situation of a medicinal mineral spring, which was apparently claimed by both, Pengson under his composition and by Mercado under his. The matter was heard by the Directorate of Civil Administration, and

the result of the investigation of that body was by it
reported to the Governor General, with its recommenda-
tion for his action.

The Governor General, conformably to the recom-
mendations made to him, issued an order annulling the
composition proceedings and the deeds issued thereunder
to Pengson, Mercado and the parish curate. It was ex-
pressly directed that all the proceedings in the several
compositions be annulled, reserving the right of the parties
to apply for a new composition. It was further directed,
however, that before such new composition be allowed a
competent surveyor be appointed, who should mark out
the boundaries of the medicinal mineral spring, with the
appurtenant land necessary to enable the public to enjoy
its benefits, and that such spring and the land so marked
out should be held as public property, reserving to private
owners the right to demand compensation for any private
land taken in the execution of the order. In addition, the
order commanded the local authorities to demand from
Pengson, Mercado and the parish priest a return of the
deeds issued to them which the order cancelled; that the
order be transmitted to the proper provincial and local au-
thorities to be executed and put of record, in conformity to
law. The order was published in the official gazette at
Manila, and was undoubtedly communicated through the
proper administrative channels to all the administrative
officers who were concerned with its execution, including
local officers of the pueblo of San Miguel. The grounds
upon which the Directorate recommended and the Gov-
ernor General annulled the composition proceedings, as
above stated, were thus enumerated in the official files:

"Account having been given by this central office to
his excellency the Governor General of the proceeding
instituted by Don Jose Fores on behalf of Don Regino
Pengson relative to a claim of lands granted by com-
position in the barrio of Sibul, pueblo of San Miguel de

Mayumo, it being found that not only the land granted to the aforesaid Pengson, but also those granted to Jose Mercado and to the parish priest of San Miguel, do not agree in their location or boundaries with those set forth in the title deeds issued by this general directorate under date of November 9, October 19, and September 25 of last year, respectively, and that these differences originate in errors committed by the expert appraiser of lands, Don Jose Moreno, when he practiced the acts relative to said lands in the capacity of acting deputy of unreclaimed lands. And it being found that the Sibul Spring has never been known as private property, nor is it included in land which may have this character, but rather that those medicinal waters have been utilized, without any hindrance or obstacle, not only by the residents of the pueblo but by the public in general, as is evidenced amongst other things by a certificate of the municipal authorities of San Miguel de Mayumo, and is confirmed by the unanimous and universal voice of the public, and it being found that the general inspection of unreclaimed lands and this general directorate have been taken unawares by the aforesaid expert to issue, as they did issue, by virtue of the surveys made by him, titles of ownership by composition of the lands bordering upon the Sibul Springs, by reason of which it might be believed that the spring is found included within some of them, and that the public and free zone which all springs have and need for their enjoyment had disappeared, and considering that the three proceedings referred to embrace a vice of nullity from their beginning, because the data which appear in the notes of survey and measurement of the lands and the plans which accompany them are not correct, and consequently the title deeds issued do not describe the lands such as they really are, and considering that the party responsible for this discrepancy is the expert, Don Jose Moreno, who, when called to explain

the errors committed by him, has not done so satisfactorily, errors all the more inexcusable in that there are involved parcels relatively small and contiguous and surveyed and measured with an insignificant lapse of time between one and the other, giving rise to the suspicion that said errors have not been caused solely by neglect nor lack of zeal, but voluntarily, and with knowledge of the mistakes which are contained."

We state in a summary way the further official action concerning the medicinal spring, referred to in the order. The Governor General directed the proper provincial and local authorities to establish at the spring a sanitarium for the use of the public. But this not being carried out, it was suggested that the spring be placed under the control of private persons for the purpose of creating a sanitarium for the public benefit, with a moderate subvention from the treasury. This project also fell through, on the suggestion that private capital might not be willing to venture an outlay for the erection of the sanitarium because of the fear of outstanding claims to ownership of the spring and the dread that it might ultimately not be held to be public property. Subsequently the provincial and local authorities were directed by the Governor General to investigate and report concerning the existence of alleged claims to private ownership of the spring, and as incident thereto to expressly report concerning its possession and use during the past. This order brought out an official statement as to the previous composition deeds, their annulment, etc., as we have stated them, coupled with a renewed declaration that investigation disclosed that the spring had never been possessed by any private person, but had always been enjoyed by the public and used as public property. Finally, in September, 1895, from Madrid, a royal decree was issued, the necessary effect of which was to sanction the previous action of the local authorities. This order

directed that the spring, with adequate appurtenant property, be sold at public auction.

Long prior to this, in fulfillment of the order of the Governor General of March 5, 1886, in that year and on the twenty-third of that month, demand was made of the curate of San Miguel for the return of the deed made to him in consequence of the composition proceedings, and he declared that he had mislaid the deed and could not find it. On the same day of the same month and year a demand was made both on Mercado and Pengson for their deeds. Pengson declared that, having filed his in the proceedings to vacate which had taken place before the Directorate, he did not have the deed in his possession. Mercado declared that he had sold the land and had delivered the deed to the purchaser. Not having disclosed who the purchaser was, further orders to call on him for disclosure were made, but he was absent and could not be reached. Afterwards, in October, 1890, Mercado having died, his widow, in answer to an official demand upon her, declared that the property covered by the composition had been conveyed by her husband during his life to Roura, to whom the deed had been delivered, and that Roura being dead, the deed would probably be found in the possession of his heir and daughter, Maria Roura, and she upon demand being made upon her, declared that during the lifetime of her father she had heard the title deed mentioned, "but at the present time I am ignorant of its whereabouts." Although the precise date does not appear, it is certain that Roura died testate, and that, by an amicable adjustment and extrajudicial partition of his estate, his two daughters, Juana and Maria Roura, petitioners before the Court of Registration, became entitled to one undivided half each of his rights in and to the land conveyed by Mercado, if any such there were.

With this prelude, we are brought to the initiation of

the proceedings in the Court of Land Registration, now before us.

The petition was filed on September 19, 1904. It is alleged that the two plaintiffs were the equal undivided owners of a tract of land, which was described, the description evidently relating to one of the tracts of land which had been described in the deed from Mercado to Roura, and in the certificate issued to Mercado by the petty governor. It was besides alleged that the title of the petitioners was derived by them as heirs of their father, and that he had derived his title from the conveyance made to him by Mercado. It was averred that "said property described is not occupied by any one," and, aside from any inference of possession to be drawn from the alleged ownership, there was no averment whatever of possession. Various documents were annexed to the petition, among which it is only necessary to mention the certificate issued to Mercado in 1885 by the petty governor and the deed made by Mercado to Roura.

The insular government appeared and opposed the prayer for registration, on the ground that the petitioners had no title to the property, and that it was a part of the public domain. When the case was called for hearing the husband of Mrs. Modesta Pengson appeared in her behalf to resist the registration applied for, on the ground that she held title to the property, and time was given to formulate an opposition, but this was not availed of, and no further action was taken on behalf of Mrs. Pengson. At the trial the petitioners offered various documents to establish their heirship of their father, which need not be referred to. Declaring that the property to which the petition related was that secondly described in the deed from Mercado to Roura (containing the spring), the petitioners offered that deed and the plan or sketch of the property, which was made in 1885, at the time of the composition proceedings. In addition they offered an

official file containing one of the administrative reports which we have stated, that is, the one saying that it would be unwise to seek to procure private capital for the purpose of establishing a sanitarium until the question of whether there was a private claim to the property was clearly settled.  The Government offered files of the administrative proceedings, showing in great detail the facts which we have previously stated, that is, the order for composition in favor of Mercado by the Directorate, the deed to him, the controversy originated by Pengson, the decree of the Governor General vacating the compositions and annulling all that had been done under them, and, indeed, establishing all the facts as to notice, the investigation and report as to possession, and the ultimate making of the royal decree.  The evidence being closed, counsel for the petitioner thus stated to the court the proposition upon which he relied to secure the allowance of the registration of the title as prayed:

"The court offers to hear the oral argument of Sr. Ferrer.  Sr. Ferrer stated that he sought the Court of Land Registration to obtain title deed to the parcel of land which is the subject of the proceeding.  The right which his principals invoked was derived from the right of the original owner, Don Jose Mercado, who acquired the same by virtue of the grant made by the Council of Civil Administration for a stipulated sum, in exchange for the parcel of land.  The deceased, Juan Roura, father of the petitioners, acquired possession of this land by virtue of a deed of sale executed by Don Jose Mercado in his favor, and from him the petitioners inherited the same. After some time had elapsed the general government annulled that title by grant without returning the money consideration for the land, and without previously hearing the defenses which the aggrieved owner might set up, when, as a matter of fact, this matter ought to have been heard before the competent court.  This is not legal; it

is an embezzlement, since it cannot be conceived that
after the possession of this real estate had been lawfully
granted and the cost thereof had been paid to the satis-
faction of both parties, as is witnessed by the documents
in evidence, all of the transaction should be afterward
retroactively annulled.

"These points having been explained he requested the
registration of the property in the name of his clients."

The court denied the prayer for the registration of the
title. Summarily stated, it was of opinion, a, that the
subject of making the composition as to the unreclaimed
land and awarding a deed was within the administrative
authority of the officials, as was also the right to revoke
and cancel the deed within a limited time for error found
to exist or fraud discovered to have been practiced in
obtaining the deed; b, that it was unnecessary to inquire
whether irregularities existed in the proceedings by which
the deed was cancelled, or whether an abuse of adminis-
trative discretion had happened in those proceedings,
because the Spanish law created express and exclusive
remedies for the correction of such errors, and required
that those remedies should be resorted to within a time
designated, and did not therefore allow such complaints
to become the subject-matter of ordinary judicial con-
troversies; c, that as the deed, which was relied upon as
the basis for registration, was the mere result of a composi-
tion proceeding and was, in its essence, not a contract
upon a moneyed consideration, but a mere gratuitous
award without the payment of a price, the question of
error committed in the annulment proceedings came
within one or the other of the systems of administrative
recourse provided by the Spanish law, which, not having
been availed of, operated to deprive of the right to com-
plain judicially of the cancellation; d, that there was no
room for holding that the right to registry obtained be-
cause of a prescriptive title, acquired under the composi-

tion deed to Mercado by virtue of article 1957 of the Civil Code, providing that "ownership and other property rights in real property are prescribed by possession for ten years . . . with good faith and a proper title." Because, first, from the date of the annulment of the title good faith had in any event ceased to exist, and, second, because of the absence of the essential element of possession, since "it has not been proved that there had been exercised, either before or after the declaration of nullity of the title, any possessory act on the part of the petitioners or of their predecessor. All effort of counsel for the petitioners consisted, after the opposition of the insular government was known, in proving that the former administration did not act within its powers in declaring the nullity of the title deed offered." The case having been carried to the Supreme Court, that court affirmed the judgment upon grounds substantially identical with those which controlled the action of the trial court.

Although we have concluded, from a consideration of the opinion of the court below, aided by the painstaking and full reference to the Spanish law contained in the brief on behalf of the insular government, that the court below was clearly right in its opinion as to the legal principles held to be decisive, we do not stop to state and review those considerations, because we think the argument at bar renders it unnecessary. We say this, because the argument for the plaintiffs in error in substance but proceeds upon the theory that, although the Spanish law was correctly expounded by the court below, nevertheless that law was inapposite because of conditions which it is insisted existed prior to and at the time the composition deed was issued and when the administrative order of annulment of that title was made. The proposition is thus stated in the argument:

"The position of the plaintiffs may be very briefly summarized as follows: In 1885 Jose Mercado was already,

by virtue of his thirty years' possession, the absolute owner of the land in question. The composition deed of October 19, 1885, did not create his title, but was merely evidence of it. The decree of March 5, 1886, was wholly ineffectual to divest his ownership, and at most only affected the record evidence of such ownership. It is immaterial that no affirmative proceedings were taken by Mercado or his successors in interest to question the validity and effect of the decree of annulment. They were justified in relying on their undisturbed possession and awaiting adverse action, when it would be open to them to raise all such questions. This ownership, founded on possession, was in itself a property right, protected by the treaty of Paris and the Organic Act, and entitled to registration as a title in fee simple. The insular government is now asking this court to carry into effect even beyond its very terms a decree of a Spanish Governor General, made thirteen years before the cession, which is void on its face as in violation of the fundamental laws of the former government, and, by virtue of such void decree, to deny plaintiffs' ownership of lands which have been in their possession for fifty years—a possession which the Spanish Government never undertook to disturb."

And the theory of established possession upon which the contention rests is reiterated in many forms of expression throughout the entire argument. But when the statement of the case which we have made is considered it becomes apparent that this contention misconceives the case as presented, since it proceeds upon an assumption unwarranted by the pleadings and unsustained by any proof whatever. As we have seen, the case as made by the pleadings was rested solely upon the right to register resulting from the composition deed, without the slightest averment of possession prior to the time that deed was issued, except as it may be considered that such possession was alleged as a necessary result of the averments as to

the deed.   It is further evident that the validity of the
deed to Mercado was the one issue which arose on the
opposition of the insular government.   That this was
understood by both parties clearly results from the fact
that not a particle of proof was offered concerning the
possession prior to or at the time of the composition deed,
irrespective of the administrative proceedings leading up
to the issue of that deed and following on its annulment.
This, moreover, is additionally demonstrated by the ex-
press declaration of counsel for petitioners concerning the
matter for decision, made after the evidence was in and
the case was ripe for consideration.   That the trial court
had not the remotest thought that such issue was be-
fore it is plainly manifest from its statement that all the
effort of the counsel of petitioners was directed to assailing
the competency of the administrative officers to avoid
the Mercado deed and annulling the composition pro-
ceedings, and that no evidence whatever had been offered
to prove possession of the property in controversy by
Mercado or any of those holding under him from the
date of the deed up to and including the time of the
submission of the cause.   That this conception of the is-
sue also prevailed when the case was taken to the Su-
preme Court of the islands we think is plainly apparent
from the assignment of errors, referred to by the Supreme
Court in its opinion.   We think it also conclusively results
from the opinion of the Supreme Court, when considered
as a whole, that that court also thought the issue pre-
sented to it was thus limited.   True it is that a concluding
passage in the opinion of the Supreme Court is referred
to as indicating that the court thought that the question
of the acquisition by Mercado of the title to the property
by preëmption prior to the composition deed was involved.
But we do not think the passage in the opinion, when
taken in connection with its context, has the meaning
attributed to it.   If it had, it would be the merest obiter,

since the pleadings did not raise that issue, and there was not the slightest proof concerning it. While it is not necessary, we deem it well to say that in reviewing the action of the court below we are, of course, confined to the record and the case therein made, and may not, as the result of mistaken suggestions as to the issues and proof disregard our duty by deciding, not the case as made, but an imaginary one, wherein issues not made and not presented below would have to be supplied, and whereby conjecture and surmise must be indulged to replace the total absence of all proof on a particular subject. So far as the unwarranted · assumption concerning the subject of possession relates to acts done after the deed to Mercado, it is also disposed of by what we have said, and is besides completely answered by the express finding of both courts concerning the absence of all proof of posses-· sion during that period.

*Affirmed.*