**BAYER AKTIENGESELLSCHAFT,**
Appellee,

v.

**DUPHAR INTERNATIONAL RE-
SEARCH B.V., Appellant.**

**Appeal No. 84–600.**

United States Court of Appeals,
Federal Circuit.

June 28, 1984.

**1238**

Donald R. Dunner, Washington, D.C., argued for appellant. With him on the brief were Allen M. Sokal, Washington, D.C.

Ellsworth H. Mosher, Alexandria, of counsel.

Arnold Sprung, New York City, argued for appellee. With him on the brief were Leonard Horn and Ira J. Schaefer, New York City.

1. U.S. Patent Nos. 3,748,356; 3,933,908; 3,989,-842; 4,013,717; and 4,110,469.

2. We note the recent controversy regarding the constitutionality of section 636(c). *See Collins v. Foreman,* 729 F.2d 108 (2d Cir.1984); *Goldstein v. Kelleher,* 728 F.2d 32 (1st Cir.1984);

Before KASHIWA, Circuit Judge, COWEN, Senior Circuit Judge, and BENNETT, Circuit Judge.

KASHIWA, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Columbia (No. 80–3123), entered September 30, 1983. 221 USPQ 1056. The district court, after ruling in favor of appellee, Bayer Aktiengesellschaft ("Bayer"), awarded attorney fees to Bayer pursuant to 35 U.S.C. § 285. We vacate and remand.

*Background*

In the district court, Bayer filed a declaratory judgment suit, seeking a declaration that its compound, SIR–8514, does not infringe the claims of appellant's, Duphar International Research B.V. ("Duphar"), patents. Duphar in turn filed a counterclaim that asserted infringement of five of its United States patents.[1] Shortly before trial, Duphar withdrew, with prejudice, its counterclaims for infringement regarding all but its U.S. Patent No. 3,989,842 (the "'842 patent"). It stated that judgment should be entered declaring that Bayer's SIR–8514 does not infringe the claims of the other four patents.

The parties consented to a trial before a United States magistrate pursuant to 28 U.S.C. § 636(c) (1982).[2] The parties narrowed the case to a single issue: the scope of claim 1 of Duphar's original application ("original claim 1"), which was a grandparent of the '842 patent application. The parties agreed that if original claim 1 literally encompassed Bayer's allegedly infringing compound, SIR–8514, then the doctrine of file history estoppel (prosecution history estoppel or file wrapper estoppel) would be

*Pacemaker Diagnostic Clinic of America, Inc. v. Instromedix, Inc.,* 725 F.2d 537 (9th Cir.1984) (en banc); and *Wharton-Thomas v. United States,* 721 F.2d 922 (3rd Cir.1983). All of these cases sustained the constitutionality of section 636(c).

applicable to prevent Duphar from expanding the scope of the claims of its '842 patent. Such a finding would entitle Bayer to a declaration of noninfringement of Duphar's '842 patent.

### The Invention

The '842 patent relates to certain substituted benzoyl ureas, and insecticidal preparations containing them. Original claim 1 reads:

1. Compounds of the formula

where

A is a hydrogen atom, a halogen atom, a methyl group or a methoxy group,

B also represents a hydrogen atom, a halogen atom, a methyl group or a methoxy group, with the proviso that A and B do not both represent a hydrogen atom,

X and Y each represent an oxygen atom or a sulfur atom,

R is a hydrogen atom, an alkyl group, a hydroxy group, an alkoxy group, an alkoxymethyl group, an ocyl group or an alkoxycarbonyl group,

$R_1$ is a hydrogen atom, an alkyl group which may be substituted with halogen, with alkoxy, with alkylthio or with cyano, a 1-cycloalkenyl group, a benzyl group which may be substituted with halogen, a hydroxy group, an alkoxy group, an acyl group, an alkoxycarbonyl group, an alkoxythiocarbonyl group, an alkylsulfonyl group or a phenylsulfonyl group, whilst furthermore R and $R_1$ together with the group

$$-N-C-N-R_2$$
$$\overset{\|}{Y}$$

indicated in the above formula may form a ring system, and $R_2$ *represents a substituted* or non-substituted *phenyl group or a pyridyl group which may be substituted with halogen, with nitrocyano or with halogenated alkyl.* [Emphasis added.]

The specification of the '842 patent, as well as the specification of the original application, includes the following disclosure:

If $R_2$ is a substituted phenyl group, the phenyl group contains at least one substituent chosen from the group *consisting of:*

a. 1–3 halogen atoms,

b. 1–2 alkyl groups, possibly substituted with halogen, hydroxy, alkoxy, alkylthio, dialkyl amino, alkylsulphonyl [sic] and phenyl,

c. tri- or tetramethylene,

d. a cycloalkyl group, possibly substituted with halogen or cyano,

e. 1–2 nitro groups or cyano groups or alkoxy groups,

f. a dioxymethylene or dioxyethylene group,

g. an acyl group, which may be substituted with halogen,

h. an alkyl sulfonyl, phenyl sulfonyl, alkylthio, phenylthio or phenoxy group, which groups may be substituted with halogen,

i. a sulfonamide group, which may alkylated, and

[j. not used]

k. a phenyl group, which may be substituted with halogen, nitro, cyano and halogenated alkyl. [Emphasis added.]

During prosecution of the application that matured into the '842 patent, as well as its parent and grandparent applications, original claim 1 and other generic claims were repeatedly rejected under 35 U.S.C. § 121.[3] Duphar contends that the section

---

**3.** Section 121, in pertinent part, states:

§ *121. Divisional applications*

If two or more independent and distinct inventions are claimed in one application, the Commissioner may require the application to be restricted to one of the inventions. If the other invention is made the subject of a divisional application which complies with the requirements of section 120 of this title it shall be entitled to the benefit of the filing date of the original application.

121 rejections were traversed,[4] and the appropriate generic claims were cancelled in order to permit the continued examination of the elected claims.[5]

### The Allegedly Infringing Compound

Bayer's compound, SIR–8514, (N–(2–chlorobenzoyl)–N'–(4–trifluoromethoxyphenyl)) urea, has the following formula:

It differs from the compounds disclosed in the '842 patent and those disclosed in the prior art in that its phenyl group is substituted with a $-OCF_3$ group.

### District Court Proceeding

At trial, Duphar asserted that Bayer's SIR–8514 compound infringed the claims of the '842 patent. Although it admitted that there was no literal infringement of any of the claims of its '842 patent in view of the fact that SIR–8514 is a 2-mono-substituted benzoyl urea and not a 2,6-di-substituted benzoyl urea, as claimed, Duphar nonetheless asserted infringement under the doctrine of equivalents. In countering Duphar's contentions, Bayer asserted that Duphar had narrowed its '842 claims during prosecution to include only 2,6-di-substituted benzoyl ureas and thus, the doctrine of file history estoppel would preclude the application of the doctrine of equivalents.

4. Rejections based on section 121 have since been ruled to be improper. *In re Weber*, 580 F.2d 455, 198 USPQ 328 (CCPA 1978); *In re Haas*, 580 F.2d 461, 198 USPQ 334 (CCPA 1978).

5. Prior art patents cited during prosecution include, *inter alia*, the following:

U.S. Patent Nos. 3,261,865 and 3,450,747

To resolve this case, the parties agreed to a determination of a single issue: the scope of original claim 1. The parties agreed that if original claim 1 literally encompassed Bayer's SIR–8514 compound, then the doctrine of file history estoppel would apply. In a colloquy between the magistrate and Duphar's trial counsel, the trial counsel admitted that the issue was the scope of its original claim 1. The colloquy, in pertinent part, is as follows:

Duphar's Trial Counsel: "What is relevant at the present separate trial, of course, is the various things that Mr. Sprung [Bayer's trial counsel] will bring out through his witness and which I will attempt to controvert through maybe cross-examination and through our documentation. His objective, as I understand it, is to show that claim 1, therefore possibly claim 1–75, reads upon—reads upon the prior compound, SIR–8514. We contend that it does not and never did.

We have already admitted that if claim 1 and claim 75 and claim 152—if it read squarely upon the $OCF_3$, then we could not recapture that."

Magistrate: "And that file wrapper estoppel would then apply?"

Duphar's Trial Counsel: "File wrapper estoppel would then apply."

Magistrate: "And that would end the case."

Duphar's Trial Counsel: "That would end the case."

U.S. Patent Nos. 3,686,418 and 3,793,213

Bayer's Trial Counsel: "As long as we are in agreement that *the issue being tried here is whether claim 1 by its language was broad enough to encompass SIR–8514,* if we can show factually it was, that we win, we will limit our proof to that aspect." (Emphasis added.)

Magistrate: "All right. Very well."

Duphar's Trial Counsel: "We agree, Your Honor."

At another instance during the trial, Duphar's Trial Counsel conceded that if Bayer's compound were encompassed by original claim 1, then file history estoppel would apply. He stated:

If this court should conclude that the language "substituted phenyl" in the definition of $R_2$ meant open-ended, as unlimited substitution, then I think we would have to concede that there would be file wrapper estoppel, because, with no limitation on the substitution of the phenyl side, then, obviously, $OCF_3$, like any one of a thousand other—a million other substituents, would cover it nominally, or literally.

Duphar, at trial, argued that the substituted phenyl group in original claim 1 can only be substituted with three substituents —halogen, nitrocyano, and halogenated alkyl. If this interpretation were correct, then Bayer's compound with a –$OCF_3$ substituent would not be encompassed within original claim 1 and the doctrine of file history estoppel could not be used to limit Duphar's expansion of its '842 claims to include Bayer's compound under the doctrine of equivalents. This interpretation was based on Duphar's reading of the last phrase of original claim 1 which states that "$R_2$ represents a substituted * * * phenyl group or a pyridyl group which may be substituted with halogen, with nitrocyano or with halogenated alkyl."

Bayer, on the other hand, interpreted the phrase to mean that the three enumerated substituents referred only to the possible substituents for the pyridyl group. It contended that the substituted phenyl group had no limitations as to substituents.

The magistrate, after hearing arguments and expert testimony, found for Bayer. He found that $R_2$, as defined in original claim 1, broadly defined a substituted phenyl group that is open-ended with respect to substituents, and was not limited to halogen, nitrocyano or halogenated alkyl. He, therefore, found that Bayer's SIR–8514 compound was encompassed within the literal language of original claim 1.

In his Conclusions of Law, the magistrate recited the doctrine of file history estoppel. He stated in pertinent part:

File wrapper estoppel may arise by narrowing a claim by amendment or simply by cancelling broader claims and leaving narrower ones.

\* \* \* \* \* \*

It is immaterial as to whether or not the restriction of the claim was actually necessary, or whether a claim of broader scope than the restricted claim would have been allowed. *What was surrendered, rather than the reason for the surrender, is the controlling consideration.*

\* \* \* \* \* \*

Thus, the doctrine of file wrapper estoppel precludes defendant Duphar from expanding the scope of the claims in patent 3,989,842 under the doctrine of equivalence * * *. [Emphasis added.] [Citations omitted.] [221 USPQ at 1062–63.]

Accordingly, judgment was entered in favor of Bayer, declaring that its SIR–8514 compound did not infringe the claims of Duphar's '842 patent.

In addition, the magistrate found that this case was an exceptional case based on the facts set forth in his factfindings. As such, he ruled that Bayer was entitled to an award of reasonable attorney fees pursuant to 35 U.S.C. § 285. The magistrate concluded that:

[t]he factual issues in this case on the applicability of the file wrapper estoppel was [sic] not even close. Indeed, Duphar having narrowed its claims in order to obtain allowance of its patents, should have realized that its position bordered

on the frivolous when it claimed infringement and induced Bayer to initiate this suit for declaratory judgment. While this Magistrate fully appreciates that attorney's fees should not be awarded to a prevailing plaintiff under 35 U.S.C. § 285 as a routine matter, the facts here clearly justify an award of reasonable attorney's fees to the plaintiff, Bayer. [Citations omitted.] [221 USPQ at 1064.]

## OPINION

 35 U.S.C. § 285[6] authorizes a court, in an exceptional case, to award reasonable attorney fees to the prevailing party. *See generally Rohm & Haas Co. v. Crystal Chemical Co.*, 736 F.2d 688 (Fed. Cir.1984) (order). Although the award of such fees is discretionary with the court, such discretion, nonetheless, may only be exercised upon a specific finding of exceptional circumstances. *Stevenson v. Sears, Roebuck & Co.*, 713 F.2d 705, 712–13, 218 USPQ 969, 975 (Fed.Cir.1983). In awarding attorney fees to a prevailing accused infringer, such exceptional circumstances include, *inter alia,* inequitable conduct during prosecution of a patent,[7] misconduct during litigation,[8] vexatious or unjustified litigation,[9] or a frivolous suit.[10] Moreover, such an award cannot be overturned unless the district court abused its discretion, *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1068, 219 USPQ 670, 678 (Fed. Cir.1983), or made its determination with an erroneous conception of the law. *See Mayview Corp. v. Rodstein*, 620 F.2d 1347, 1357, 205 USPQ 302, 311 (9th Cir.1980); *see*

*also Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1564, 219 USPQ 377, 388 (Fed.Cir. 1983).

## I

In the instant appeal, Duphar is seeking to reverse *only* the award of attorney fees. It argues that the magistrate misapprehended the doctrine of file history estoppel, as evidenced by his statement "What was surrendered, rather than the reason for the surrender, is the controlling consideration." It appears that the magistrate believed that if claims were once narrowed for whatever reason, then the doctrine of equivalents cannot be invoked under any circumstances. The attorney fees award is, therefore, based on an erroneous conception of the law.[11] We, however, can only partially agree with Duphar.

 We agree with Duphar that the magistrate misstated the doctrine of file history estoppel. As stated by this court in *Hughes Aircraft Co. v. United States,* 717 F.2d 1351, 1362, 219 USPQ 473, 481 (1983):

> The estoppel applies to claim amendments to overcome rejections based on prior art, * * * and to arguments submitted to obtain the patent.

> \* \* \* \* \* \*

Some courts have expressed the view that virtually any amendment of the claims creates a "file wrapper estoppel" effective to bar all resort to the doctrine of equivalents, and to confine patentee "strictly to the letter of the limited claims granted," * * *. We, as has the

---

6. Section 285 states:
 § 285. *Attorney fees*
 The court in exceptional cases may award reasonable attorney fees to the prevailing party.

7. *Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1383–84, 217 USPQ 1281, 1286–87 (Fed.Cir.1983).

8. *Hughes v. Novi American, Inc.*, 724 F.2d 122, 125, 220 USPQ 707, 710 (Fed.Cir.1984); *Orthopedic Equip.*, 707 F.2d at 1384, 217 USPQ at 1287.

9. *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1564, 219 USPQ 377, 388 (Fed.Cir.1983).

10. *CTS Corp. v. Piher Int'l Corp.*, 727 F.2d 1550, 1558, 221 USPQ 11, 16 (Fed.Cir.1984); *Oetiker v. Jurid Werke GmbH,* 671 F.2d 596, 602, 215 USPQ 21, 26 (D.C.Cir.1982) (Markey, C.J., sitting by designation).

11. Duphar also contends that the magistrate, having an erroneous conception of the law, misapplied the doctrine of file history estoppel by ruling that file history estoppel regarding the generic claims was created when these claims were not rejected over prior art. Since other issues are dispositive in this case, we need not and do not reach the question whether or not divisionals pursuant to 35 U.S.C. § 121 could create a file history estoppel.

Supreme Court, reject that view as a wooden application of estoppel * * *.

Amendment of claims is a common practice in prosecution of patent applications. * * * Amendments may be of different types and may serve different functions. Depending on the nature and purpose of an amendment, it may have a limiting effect within a spectrum ranging from great to small to zero. [Citations omitted.]

Thus, whenever the doctrine of file history estoppel is invoked, a close examination must be made as to, not only what was surrendered, but also the reason for such a surrender. The fact that claims were narrowed does not always mean that the doctrine of file history estoppel completely prohibits a patentee from recapturing some of what was originally claimed. Accordingly, limiting the claims because of a restriction requirement, as occurred here, would not necessarily invoke file history estoppel.

If the magistrate's decision in the instant case were based solely on an erroneous conception of law, the doctrine of file history estoppel, then it would have been reversible error. *See Mayview, supra; Stickle, supra.* The reason that we can only partially agree with Duphar is the fact that the doctrine of file history estoppel was not the issue posed at trial.

The issue posed at trial, instead, was whether or not Duphar's original claim 1 literally encompassed Bayer's SIR–8514 compound. And, the argument or theory advanced by Duphar at trial was that the substituted phenyl group in its original claim 1 had only three substituents. After hearing the arguments and testimony by experts, the magistrate found that Duphar's interpretation of its original claim 1, based on the argument or theory advanced by Duphar, was frivolous. Such frivolity, the magistrate held, justified an award of attorney fees for Bayer. If we were to ignore the magistrate's misstatement regarding file history estoppel, we would probably agree with the magistrate that the argument or theory advanced by Duphar at trial was frivolous.

Thus, although we agree with Duphar that the magistrate misstated the doctrine of file history estoppel, we cannot agree with it that the magistrate's finding of frivolity is totally incorrect.

## II

To buttress its argument that the magistrate's finding of frivolity is incorrect, Duphar also contends that it had advanced a second theory at trial. This second theory, in essence, is that Bayer's SIR–8514 compound could not be encompassed within original claim 1 since the $-OCF_3$ group is not one of the enumerated phenyl group substituents disclosed in the specification of the '842 patent.

Duphar interprets the phrase in the specification "If $R_2$ is a substituted phenyl group, the phenyl group contains at least one substituent chosen from the group consisting of [groups (a)–(k)]:" to mean that the enumerated substituents in groups (a)–(k), none of which include $-OCF_3$, are the only possible substituents for the phenyl group.

We, however, find this contention to be meritless. The record does not support Duphar's contention that it presented this theory at trial. The only reference to this theory is in its Proposed Findings of Fact.

## III

We recognize that, in general, an appellate court will only review a lower court's decision in light of the grounds and theories advanced below. In *Virtue v. Creamery Package Manufacturing Co.,* 227 U.S. 8, 33 S.Ct. 202, 57 L.Ed. 393 (1913), the Supreme Court refused to consider an appellant's theory which was presented for the first time on appeal. Whereas that appellant's theory at trial was that the appellees conspired or combined in violation of the Sherman Act, its theory on appeal was that one of the appellees was also liable because it was large enough to be a combination all by itself. The issue in *Roura v. Government of the Philippine Islands,* 218 U.S. 386, 31 S.Ct. 73, 54 L.Ed.

1080 (1910), was whether a deed issued to petitioner Roura's predecessor-in-interest was valid. The focus at trial was on the competency of the Spanish colonial official who issued the deed. On appeal, however, petitioner also presented evidence of prior ownership before the issuance of the deed to support a theory of established possession. The Court refused to consider the new theory.

Thus, under normal circumstances, we would have ignored Duphar's new argument regarding the misstatement of file history estoppel because that theory was not presented below. Since the issue actually tried below was the scope of original claim 1 and Duphar presented a frivolous theory in support of its position, we would have affirmed the magistrate's finding as to frivolousness. We, however, refuse to take this route since we cannot ignore the fact that the magistrate did misstate the doctrine of file history estoppel and his misimpression of that doctrine may have affected his decision. *Dewey v. Des Moines*, 173 U.S. 193, 19 S.Ct. 379, 43 L.Ed. 665 (1899).

Simply reversing the magistrate's decision, premised on the fact that he had misstated the law, is also inappropriate in this case. First, the doctrine of file history estoppel was not the issue at trial. No one, at trial, presented the full dimension of this doctrine. For instance, the applicability or inapplicability of the doctrine in relation to certain types of rejections and amendments, *e.g.*, amendments in response to section 112 objections, was not discussed. Since a trial judge or a magistrate does not decide a case *in vacuo*, he cannot be faulted regarding a point of law when he was not informed about it at trial. In addition, the magistrate's opinion regarding attorney fees appears to be premised on other grounds. For instance, he found that this case was an "exceptional case based on the facts set forth above * * *," and that "facts here clearly justify an award of attorney's fees * * *." Although he misstated the law in relation to file history estoppel, his decision regarding frivolity may be supported by other unspecified, nonerroneous reasons.

Thus, in light of the unique facts and circumstances of this case, we vacate the magistrate's decision and remand the case to him for his further consideration and elaboration of the award of attorney fees.

VACATED and REMANDED.