**MERCK & CO., INC., Plaintiff–Appellant,**

v.

**MYLAN PHARMACEUTICALS, INC., Defendant–Appellee.**

No. 99–1044.

United States Court of Appeals, Federal Circuit.

Sept. 3, 1999.

Mary G. Graham, Morris, Nichols, Arsht & Tunnel, Wilmington, Delaware, argued, for plaintiff-appellant. With her on the brief were Richard L. Sutton and Maryellen Noreika. Of counsel on the brief were Paul D. Matukaitis and Kevin J. McGough, Merk & Co., Inc., Rahway, New Jersey.

James H. Wallace, Jr., Wiley, Rein & Fielding, Washington, DC, argued, for de-

fendant-appellee. With him on the brief were Gregory R. Lyons, Peter J. Skalaban, Jr., and Timothy R. Holbrook.

Before NEWMAN, LOURIE, and CLEVENGER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Merck & Co., Inc. appeals from the decision of the United States District Court for the Eastern District of Pennsylvania[1] wherein the court granted summary judgment that Mylan Pharmaceuticals, Inc. did not infringe Merck's United States Patents Nos. 4,832,957 ('957 patent) and 4,900,755 ('755 patent). The judgment is affirmed.

## BACKGROUND

The '957 and '755 patents are directed to a controlled release formulation of a combination of the drugs levodopa and carbidopa, used to treat Parkinson's disease. This combination of drugs was known for this use, but when used in an immediate release formulation the combination was subject to side effects such as "wearing-off" and "on-off" phenomena. It was known that the controlled release of levodopa and carbidopa over a period of time ameliorates these side effects, and that certain polymeric vehicles implement controlled release.

According to the patents in suit, the desired controlled release is achieved by delivering these drugs in a polymer vehicle, the specific composition of which is the issue in this dispute. In Merck's '957 patent, claim 1 (the broadest claim) recites a combination of carbidopa and levodopa in a combination of polymers that comprises 5–25 mg of hydroxypropyl cellulose (HPC)

and 2–50 mg of polyvinyl acetate-crotonic acid (PVACA):

1. A controlled release oral dosage formulation comprising a uniform dispersion of 25–100 mg of carbidopa, 100 to 400 mg of levodopa, 1–10 mg of a tablet lubricant and in mixture thereof with a pharmaceutically acceptable dye, in a *polymer vehicle comprising 5–25 mg of water-soluble hydroxypropyl cellulose [HPC] polymer, and 2–50 mg of a less water-soluble polyvinyl acetate-crotonic acid [PVACA] copolymer,* whereby following administration the carbidopa and levodopa are released slowly and simultaneously from the formulation.

(Emphasis and acronyms added.)

The '755 patent is a division of the '957 patent, and claims the same combination polymer vehicle:

1. A controlled release oral dosage formulation comprising a uniform dispersion of 25–100 mg of carbidopa and 100 to 400 mg of levodopa in a *polymer vehicle comprising 5–25 mg of a water-soluble hydroxypropyl cellulose [HPC] polymer, and 2–50 mg of a less water-soluble polyvinyl acetate-crotonic acid [PVACA] copolymer* whereby, following administration, the carbidopa and levodopa are released slowly and simultaneously from the formulation.

Mylan filed an Abbreviated New Drug Application with the Food and Drug Administration, for a product containing 50 mg of carbidopa, 200 mg of levodopa, 29.3 mg of water-soluble HPC polymer, and 12.8 mg of hydroxypropyl methylcellulose (HPMC). Merck brought suit pursuant to 35 U.S.C. § 271(e)(2)(A)[2] charging Mylan with infringement under the doctrine of

---

1. *Merck & Co. v. Mylan Pharmaceuticals, Inc.,* 19 F.Supp.2d 334 (E.D.Pa.1998).

2. § 271(e)(1)(2). It shall be an act of infringement to submit—

(A) an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act or described in section 505(b)(2) of such Act for a drug claimed in a patent or the use of which is claimed in a patent. . . .

equivalents of claims 1–3 of each of the '957 and '755 patents. No charge of literal infringement was made, for Mylan's polymer vehicle is not identical to that of the claims. However, Merck asserts that the polymer vehicle in Mylan's product (29.3 mg of HPC and 12.8 mg of HPMC) is equivalent to Merck's claimed polymer vehicle (5–25 mg of HPC and 2–50 mg of PVACA). Merck states that any difference is insubstantial in that the HPMC and PVACA are interchangeable in this use, for both are less water-soluble than HPC.

Mylan moved for summary judgment of non-infringement, arguing that the prosecution histories of the '957 and '755 patents estopped Merck from asserting that Mylan's product infringed under the doctrine of equivalents, and also that the prior art prevented application of the doctrine of equivalents to reach Mylan's formulation. The district court granted summary judgment of non-infringement, holding that both prosecution history estoppel and the prior art preclude a finding of equivalency. This appeal followed.

■ We review _de novo_ the correctness of the grant of summary judgment, including the issues of estoppel and the effect of the prior art on application of the doctrine of equivalents. _See EMI Group North America, Inc. v. Intel Corp.,_ 157 F.3d 887, 891, 48 USPQ2d 1181, 1184 (Fed.Cir.1998); _Loctite Corp. v. Ultraseal, Ltd.,_ 781 F.2d 861, 870, 228 USPQ 90, 96 (Fed.Cir.1985).

I

## PROSECUTION HISTORY ESTOPPEL

The district court ruled that Merck had surrendered coverage of a HPC/HPMC polymer vehicle during prosecution, by amending and narrowing the claims in response to the examiner's rejection of Merck's broad claims on the ground of obviousness in view of certain prior art. The prosecution of Merck's patents involved four patent applications: the initial application; two continuation-in-part applications, on the second of which the '957 patent issued; and a divisional that led to the '757 patent.

A

The broadest claim of the initial application was directed to a carbidopa-levodopa combination in a polymer vehicle that comprised, broadly, a combination of a water soluble and a less water soluble polymer, as follows (emphasis added):

> A controlled release oral dosage formulation comprising a uniform dispersion of 5–300 mg of carbidopa, 2–1200 mg of levodopa, 0–25 mg of a tablet lubricant and optionally a pharmaceutically acceptable dye, in _a polymer vehicle comprising 0–120 mg of water soluble polymer and 0–120 mg of a less water soluble polymer, with the proviso that both polymers are not 0 mg,_ whereby following administration the carbidopa and levodopa are released slowly and simultaneously from the formulation.

The examiner rejected the claims under 35 U.S.C. § 103 in light of certain references including U.S. Patents Nos. 4,424,235 (Sheth) and 4,389,393 (Schor). Sheth describes controlled release preparations of carbidopa and levodopa in the concentration shown by Merck, wherein the polymer vehicle may be a mixture of polymers selected from a group including HPC and HPMC. The Sheth formulation also contains fatty materials for the purpose of floating the drugs in the stomach, where the polymer vehicle releases the drugs. The Schor patent describes a formulation for the controlled release of a medicament, using a polymer vehicle that is a combination of HPC and HPMC. The examiner, in addition to rejecting the claims under

§ 103, required Merck to make an election of species for examination purposes, citing 35 U.S.C. § 121.

Merck then filed a continuation-in-part application, now claiming the polymer vehicle, in the broadest claim, in Markush form:

A controlled release oral dosage formulation comprising a uniform dispersion of 5–300 mg of carbidopa, 2–1200 mg of levodopa, 0–25 mg of a tablet lubricant and optionally a pharmaceutically acceptable dye, in a *polymer vehicle comprising 0–120 mg of a water-soluble polymer selected from hydroxypropyl cellulose [HPC], hydroxypropyl methylcellulose [HPMC], polyvinyl pyrrolidone, polyethylene glycol, starch and methyl cellulose and 0–120 mg of a less water soluble polymer selected from polyvinyl acetate-crotonic acid [PVACA] copolymer, polyvinyl chloride, polyethylene, cellulose acetate, polyvinyl alcohol, ethylene vinyl acetate copolymer, polyvinyl acetate, polymethyl methacrylate, and ethyl cellulose, with the proviso that both polymers are not 0 mg,* whereby following administration the carbidopa and levodopa are released slowly and simultaneously from the formulation.

(Emphasis and acronyms added.) The examiner again rejected all of the claims under § 103, citing, *inter alia,* the Sheth and Schor patents. The examiner also required that Merck elect a single species for further prosecution.

Merck then filed the second continuation-in-part application, limiting the broadest claim to the combination of HPC and PVACA, as follows:

A controlled release oral dosage formulation comprising a uniform dispersion of 25–100 mg of carbidopa, 100 to 400 mg of levodopa, 1–10 mg of a tablet lubricant and in mixture thereof with a pharmaceutically acceptable dye, in a *polymer vehicle comprising 5–25 mg of water-soluble polymer hydroxypropyl cellulose [HPC] polymer, and 2–50 mg of a less water-soluble polyvinyl acetate-crotonic acid [PVACA] copolymer,* whereby following administration the carbidopa and levodopa are released slowly and simultaneously from the formulation.

(Emphasis and acronyms added.) Merck explained that "[t]he amendment to the claims is an attempt to obviate therefrom the formal rejections found in the parent application." This application issued as the '957 patent.

In a divisional application Merck retained the broad Markush claims, in claims that omitted the tablet lubricant and the dye. Upon the examiner's rejections under § 103 citing *inter alia* the Sheth and Schor references, and the requirement that Merck elect a single species, Merck amended the divisional claims to recite a "polymer vehicle comprising 5–25 mg of water-soluble hydroxypropylcellusose [HPC] polymer and 2–50 mg of a less water-soluble polyvinylacetate-crotonic acid [PVACA] copolymer." Merck distinguished Sheth as follows:

[Sheth] does describe a sustained-release combination of levodopa and carbidopa, but the design of the formulation and the components thereof differ from those of the present claims. A single polymer is used in the Sheth formulation selected from a natural gum, methyl cellulose, [HPMC], [HPC] and sodium carbomethylcellulose. The claimed formulation is a combination of [HPC] and [PVACA] copolymer.

Merck also distinguished Schor, stating that Schor "does not suggest the combination of [HPC] and [PVACA] copolymer as presently claimed." The divisional application duly issued as the '755 patent, with claims wherein the only polymer vehicle was the combination of HPC and PVACA.

Merck did not pursue the other polymers of the Markush grouping.

## B

■ If claim scope is relinquished during prosecution on grounds of patentability, the doctrine of prosecution history estoppel provides that the relinquished scope can not be recovered by operation of the doctrine of equivalents. *Warner–Jenkinson Co. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 30–32, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d 1865, 1871–72 (1997); *EMI,* 157 F.3d at 897, 48 USPQ2d at 1188–89. It is necessary to ascertain what was relinquished, and why, to establish the extent of the estoppel. *Mannesmann Demag Corp. v. Engineered Metal Products Co.,* 793 F.2d 1279, 1284, 230 USPQ 45, 47–48 (Fed.Cir.1986).

■ Merck argued to the district court, and repeats on appeal, that it was compelled by the examiner to elect a species from the proposed Markush genus, and that it amended its claims for this reason and not because the claims were unpatentable under § 103. Merck argues that it simply complied with the examiner's formal requirement of an examination expedient, and did not yield anything in response to the rejection on obviousness, in either of the patents in suit. In *Bayer Aktiengesellschaft v. Duphar Int'l Research B.V.,* 738 F.2d 1237, 1243, 222 USPQ 649, 653 (Fed.Cir.1984), the court held that "limiting the claim because of a restriction requirement ... would not necessarily invoke file wrapper estoppel." *See also Ortho Pharmaceutical Corp. v. Smith,* 959 F.2d 936, 941 (Fed.Cir.1992) (infringement found under doctrine of equivalents, of claims to a subgenus of a generic claim that had been subject to a restriction requirement). According to Merck, once it had elected a species, "the examiner's rejection based on the prior art simply became irrelevant to the prosecution." Thus Merck argues that its election to prosecute a claim covering its commercial formulation when the examiner required an election of species did not effect an estoppel against equivalent polymer combinations.

Merck described this amendment to the examiner as "an attempt to obviate therefrom the formal rejections found in the parent application" and "tantamount to" an election of species. The district court found that Merck limited its claims to the particular polymer species in response to the examiner's obviousness rejection, notwithstanding that the examiner had also imposed a restriction requirement. The examiner had rejected the Markush claims under § 103, citing Sheth as "describing sustained release preparations of levodopa and/or carbidopa" and Schor as "describing a controlled release composition of embraced species of polymers, for any and all oral drugs." The polymer combination of HPC and PVACA is, without dispute, not suggested by Sheth or Schor.

■ The determination of whether an amendment was made for purposes of patentability on grounds of obviousness is adjudged from the viewpoint of a person of skill in the field of the invention, and when the issue includes consideration of formalities of patent practice, experience in patent law and procedures is presumed. The court must determine what such a person would conclude from the prosecution record. *See EMI,* 157 F.3d at 898, 48 USPQ2d at 1189; *Modine Mfg. Co. v. United States Int'l Trade Comm'n,* 75 F.3d 1545, 1555–56, 37 USPQ2d 1609, 1616 (Fed.Cir.1996). Although Merck carried the Markush-group polymers into the divisional application, upon rejection under § 103 and the formal requirement for an election of species Merck again elected the HPC/PVACA combination. Although this action also resolved the requirement of an election of species, we conclude that the

controlling fact is that Merck no longer sought to claim any of the several other polymer vehicles. *Cf. Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313, 1326, 50 USPQ2d 1865, 1873 (Fed.Cir.1999) ("applicant may not avoid the conclusion that an amendment was made in response to prior art by discussing the amendment under the rubric of a clarification due to a § 112 indefiniteness rejection"). We therefore conclude that the most reasonable reading of the prosecution history is that Merck's actions in limiting all of the claims of both patents to a single species of combined polymer vehicle, without further pursuit of the broader polymer claims, were primarily in consideration of the patentability rejection under § 103.

■ Thus we conclude that prosecution history estoppel arises. However, estoppel is not automatic as to everything beyond the literal scope of the claim; its extent must be determined from what was relinquished, in light of the prior art. *See Warner–Jenkinson*, 520 U.S. at 32 n. 7, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d at 1872 n. 7 (courts may explore the manner in which the amendment "addressed and avoided the rejection"); *Hughes Aircraft Co. v. United States*, 140 F.3d 1470, 1477, 46 USPQ2d 1285, 1289–90 (Fed.Cir.1998) (amendments made to overcome a prior art rejection narrow the range of equivalents accordingly); *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1455, 46 USPQ2d 1321, 1325 (Fed. Cir.1998) (equivalency is determined on the facts of what was surrendered and why); *Bayer*, 738 F.2d at 1243, 222 USPQ at 653 ("a close examination must be made as to not only what was surrendered, but also the reason for the surrender").

■ The district court, reviewing the claim scope that was yielded by Merck, referred to the polymers in the cancelled Markush claim. The court found that Merck "further narrowed its claims to re-quire the two specific polymers of PVACA and HPC, thereby surrendering its claims to the other five polymers specified in the water soluble polymer group and to the other eight polymers specified in the less water soluble group." The district court did not discuss that both of the polymers used by Mylan, HPC and HPMC, appeared in Merck's "water soluble" group.

Merck argues that even if some degree of estoppel were incurred by the prosecution procedure, it does not extend to Mylan's formulation. Merck argues that although the examiner cited both Sheth and Schor, the examiner's patentability rejection was based on the obviousness of "combining the notion of the controlled release of levodopa/carbidopa of Sheth with the Schor polymer vehicle of HPMC and optionally up to 30% HPC," in Merck's words. Therefore, according to Merck, it is only the specific formulation of Schor, *i.e.*, HPMC and optionally up to 30% HPC, that was surrendered. Merck argues that this does not preclude infringement under equivalency by Mylan's formulation. In addition, although Merck's specification describes both HPC and HPMC as "water soluble," Merck states that HPMC is less water soluble than HPC and that this difference was known to the prior art. Thus Merck argues that HPMC is the equivalent of the claimed "less water soluble" PVACA, and that there is no estoppel to reaching this polymer as a known interchangeable vehicle.

The district court read the prosecution history as surrendering the polymers in the Markush group that were described in the references on which the § 103 rejection was based. Merck does not dispute that its Markush group encompassed Mylan's HPC/HPMC polymer vehicle. Since the examiner rejected the Markush claims in light of references that described a HPC/HPMC polymer vehicle, when Merck limited its claims to the HPC/PVACA combination it became estopped as to that

vehicle in the dropped claims. Thus we affirm the district court's ruling that Merck is estopped to assert infringement by the HPC/HPMC combination, under the doctrine of equivalents, of either the '957 or the '755 patent.

*AFFIRMED*