**RITE–HITE CORPORATION, et al.,
Appellees, Cross-appellants,**

v.

**KELLEY COMPANY, INC.,
Appellant, Cross-appellee.**

**Appeal Nos. 86–1096, 86–1158.**

United States Court of Appeals,
Federal Circuit.

May 21, 1987.

Glenn O. Starke, Andrus, Sceales, Starke & Sawall, Milwaukee, Wis., argued, for appellant/cross-appellee. With him on the brief, was Gary A. Essmann.

Theodore W. Anderson, Neuman, Williams, Anderson & Olson, Chicago, Ill., argued, for appellees/cross-appellants. With him on the brief, were Arthur A. Olson, Jr., Lawrence E. Apolzon, Newman, Williams, Anderson & Olson of Chicago, Ill. Also on the brief, was Gilbert W. Church, Foley & Lardner, Milwaukee, Wis.

Before SMITH, NEWMAN, and BISSELL, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Kelley Company, Inc. ("Kelley") appeals the judgment of the United States District Court for the Eastern District of Wisconsin, *Rite-Hite Corp.* v. Kelley Co., 629 F.Supp. 1042, 231 U.S.P.Q. 161 (E.D.Wis. 1986), holding not invalid and infringed certain claims of U.S. Patent No. 4,373,847 ("the '847 patent") owned by Rite-Hite Corporation. Injunctive relief was granted, but stayed during pendency of this appeal. Rite-Hite cross-appeals the district court's failure to find willful infringement and its denial of attorney fees and multiplied damages. We affirm the district court's judgment.

I

The '847 patent, invention of Steven J. Hipp and Norbert Hahn entitled "Releasable Locking Device", is for an apparatus for securing a parked vehicle such as a truck, to an adjacent upright structure such as a loading dock, in order to prevent the truck from pulling away during loading or unloading. The district court found that

---

* Appellees/Cross-appellants are Rite-Hite Corp., Acme Dock Specialists, Inc., Allied Equipment Corp., Anderson Material Handling Co., Applied Handling, Inc., W.E. Carlson Corp., R.B. Curlin, Inc., Equipment Systems, Inc., Great Northern Industrial Prod., Inc., HOJ Engineering & Sales Co., Inc., Indy Equipment Co., Inc., Johnson Equipment Co., Keller Equipment Co., Inc., King Industrial Equipment, Inc., Loading Dock Equipment Co., Inc., McCormick Equipment Co., Inc., Metro Dock Specialists, Inc., Mid-Atlantic Handling Systems, Inc., Niehaus Industrial Sales, Inc., Northway Material Handling Co., Inc., Rice Equipment Co., Stokes Equipment Co., Inc., Timbers & Assoc., Inc., Todd Equipment Corp., U.S. Materials Handling Corp., John L & Associates, Inc., and Stordox Equipment Co., hereinafter collectively referred to as "Rite-Hite".

the device was the result of a "long and arduous" development program, *Rite-Hite*, 629 F.Supp. at 1048, 231 U.S.P.Q. at 163, was an advancement in the art of vehicle restraints, *id.*, at 1049, 231 U.S.P.Q. at 164, and achieved commercial success, *id.*, at 1051, 231 U.S.P.Q. at 166.

Claim 1, the broadest claim, is as follows:

1. A releasable locking device for securing a parked vehicle to an adjacent relatively stationary upright structure, said device comprising

(a) a first means mountable on an exposed surface of the structure,

(b) a second means mounted on said first means for substantially vertical movement relative thereto between operative and inoperative modes,

(c) the location of said second means when in an inoperative mode being a predetermined distance beneath the location of said second means when in an operative mode and in a noncontacting relation with the vehicle, and

(d) third means for releasably retaining said second means in an operative mode,

(e) said second means including a first section projecting outwardly a predetermined distance from said first means and the exposed surface of the structure, one end of said first section being mounted on said first means for selective independent movement relative thereto along a predetermined substantially vertical path, and a second section extending angularly upwardly from said first section and being spaced outwardly a substantially fixed distance from said first means and the exposed surface of the structure,

(f) said second means, when in an operative mode, being adapted to interlockingly engage a portion of the parked vehicle disposed intermediate the second section and said first means,

(g) said second means, when in an inoperative mode, being adapted to be in a lowered nonlocking relation with the parked vehicle.

Kelley argues that the district court erred in holding that the claims of the '847 patent were not invalid, and on appeal re-fers particularly to Taylor U.S. Patent No. 4,148,498 ("the Taylor patent"). The district court held that Kelley had not met its burden of proving invalidity and, following discussion of the prior art, the court stated that "the claimed combination would not have been obvious to one skilled in the art", and that "[e]ven if these [prior art] devices include each of the claimed mechanical elements, their structure, interrelationship, application, and operation vary so drastically and distinctly from the claimed invention that it cannot be found that these devices show the claimed combination." *Id.*, at 1055–56, 231 U.S.P.Q. at 169. No error has been demonstrated in this conclusion.

Kelley asserts that the "pivotal point" in this appeal is the construction of the claims, arguing that Rite-Hite necessarily construed the claims narrowly before the United States Patent and Trademark Office ("PTO") in order to obtain their allowance over the Taylor patent. Kelley states that the scope and validity of the claims in light of the Taylor patent's disclosure was "vigorously argued" in the district court proceedings, but also argues that Taylor was inadequately weighted and understood by the district court because the court did not specifically refer to Taylor in its findings on validity.

Kelley's arguments with respect to the Taylor patent turn in significant part on the prosecution of the Rite-Hite patent application before the PTO. It is not disputed that the Taylor patent was a cited reference. Kelley's position is that Rite-Hite "quite likely" made oral representations to the examiner "stressing the difference" between Taylor and the claimed invention, in order to obtain allowance of the claims. Kelley charges that Rite-Hite violated PTO regulations pertinent to amendments and interviews with patent examiners, by filing an inadequate record of the interview held in connection with Rite-Hite's petition to expedite the prosecution of its application, implying that Rite-Hite in "callous disregard of the PTO rules" did not record representations made to the examiner.

The PTO record of that interview contains the Examiner Interview Summary Record, a form filled out by the examiner. On the form the examiner had placed a check mark by the printed statement: "It is not necessary for applicant to provide a separate record of the substance of the interview."

The written amendment and response that Rite-Hite mailed to the PTO the day following the interview are consistent with the examiner's record of the interview. In that response Rite-Hite discussed the Taylor trailer hitch as requiring compensation for pitch, roll, and turning movements, and careful alignment of the ball and socket parts of the tractor and trailer "to effect a secure interlocking relation." Rite-Hite distinguished the Taylor problem, and its solution, from its own invention:

> There is no positioning of a ball in a socket or the like required with applicants' structure. In fact, the claimed structure is capable of automatically compensating for variations in size and shape which commonly occur in ICC bars.

Kelley argues that the amendment and response filed after the interview were not fully responsive as required by 37 C.F.R. §§ 1.111 and 1.133(b). *See also* Manual of Patent Examining Procedure § 713.04 (4th ed. 1979). The examiner did not so hold, upon inspection as required by Manual § 714.05. Kelley has provided neither evidence nor inference to overcome the presumption that the PTO complied with its own rules, including those rules relating to review of the content of amendments filed by an applicant. No irregularity has been shown in the examiner's actions or record of the interview.

■ The district court correctly did not require more of the patent applicant than was required by the PTO. The record provides no support for Kelley's argument that Rite-Hite "quite likely" took a position before the PTO contrary to its present position. Nor is there support for Kelley's argument that the scope of the claims must be restricted merely because Rite-Hite followed the examiner's instructions and did not file a separate interview summary.

Having been shown no clear error in the factual findings of the district court, and discerning no error of law, we affirm that Kelley has not proven the '847 patent invalid.

## II

The burden of proving infringement by a preponderance of the evidence is on the person asserting the patent right. *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1361, 219 U.S.P.Q. 473, 480 (Fed.Cir. 1983).

■ Determination of infringement of claims written in means-plus-function form is governed by 35 U.S.C. § 112 paragraph 6, which states that "such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." The patent specification, other claims in the patent, the prosecution history, and expert testimony may be considered in ascertaining claim scope under section 112. *See King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 862, 226 U.S.P.Q. 402, 408 (Fed.Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986); *Palumbo v. Don-Joy Co.*, 762 F.2d 969, 975, 226 U.S.P.Q. 5, 8 (Fed.Cir.1985).

Kelley argues that if the patent claims are construed sufficiently narrowly to preserve their validity in view of the Taylor reference, then the claims also exclude and can not be infringed by the Kelley device. This argument appears to be based in part on Kelley's position, which was not accepted by the district court, that the only element of the '847 claims that could be distinguished from the Taylor reference is the "third means" of claim clause (d).

Looking specifically at the "third means", Taylor teaches the use of a meshed nut-and-screw assembly for raising and lowering Taylor's hook assembly. Kelley argues that this is a direct mechanical analog of Kelley's rack-and-pinion mechanism, and that both these mechanisms are different from the one-way locking ratchet-

and-pawl shown in the '847 specification. The district court reviewed the evidence and found the Kelley rack-and-pinion to be equivalent to the ratchet-and-pawl described in the specification:

While, in the preferred embodiment described in the '847 patent, the first part of the retaining means is a ratchet and the second part is a pawl, the description in column 2 starting at line 2 makes it very clear that the patent is not limited to this particular embodiment. At column 3, line 5, the description makes it clear that other equivalent devices, and in particular elongated vertically extending devices, could be employed instead of a ratchet. At column 4, lines 9–10, the description makes it equally clear that other equivalent devices could be substituted for the pawl. From the testimony of both experts, the Patent Office prosecution history, and the other evidence, it is clear that the rack and pinion of Kelley and the threaded shaft of the Taylor, et al. reference, cited by the Examiner, are the equivalent of the ratchet and pawl shown in the particular embodiment described in the '847 patent.

*Rite-Hite,* 629 F.Supp. at 1050, 231 U.S. P.Q. at 165. The district court further found,

looking to the prosecution history of the '847 patent, the amendments to the claims and description following the citation of the Taylor, et al., patent makes it clear that the scope of equivalents for the third means is broad.

*Id.,* at 1065, 231 U.S.P.Q. at 176. The district court also referred to non-asserted claims in the '847 patent, which specifically recite a ratchet-and-pawl as the "third means". The court's conclusion that the scope of the asserted claims is not limited to a ratchet-and-pawl accords with the rule that "[w]here some claims are broad and others narrow, the narrow claim limitations cannot be read into the broad". *D.M.I., Inc. v. Deere & Co.,* 755 F.2d 1570, 1574, 225 U.S.P.Q. 236, 239 (Fed.Cir.1985) (quoting *Deere & Co. v. International Harvester Co.,* 658 F.2d 1137, 1141, 211 U.S.P.Q. 11, 16 (7th Cir.), *cert. denied,* 454 U.S. 969, 102 S.Ct. 514, 70 L.Ed.2d 386 (1981)).

We discern no error in the district court's review of the specification and claims, the prosecution history, and the teachings of Taylor, in its construction of the '847 claims.

■ In determining the question of infringement, the court applied each clause of the '847 patent claims to the Kelley device, and found that the limitations of each clause were literally present in that device. *Rite-Hite,* 629 F.Supp. at 1059, 231 U.S.P.Q. at 171–72. For each "means" limitation except the "third means" of claim clause (d) the accused device was found to contain the same structure illustrated in the specification. For the third means, the district court found that the "rack and pinion is interchangeable with a ratchet and pawl and is the clear equivalent of a ratchet and pawl for releasably retaining the hook in its operative position". *Id.,* 629 F.Supp. 1042, 231 U.S.P.Q. at 172. Interchangeability is a useful consideration when determining whether two specific structures are equivalents. *Graver Tank & Manufacturing Co. v. Linde Air Products Co.,* 339 U.S. 605, 609, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950); *Lockheed Aircraft Corp. v. United States,* 213 Ct.Cl. 395, 553 F.2d 69, 82, 193 U.S.P.Q. 449, 461 (1977).

■ The district court's finding of literal infringement in terms of 35 U.S.C. § 112 paragraph 6, not having been shown to be clearly erroneous, is affirmed. *See Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). We thus need not separately review the district court's additional finding of infringement in terms of the doctrine of equivalents.

### Willfulness

On cross-appeal, Rite-Hite objects to the district court's holding that the infringement was not "willful", and the denial of attorney fees under 35 U.S.C. § 285 and multiplied damages as authorized by 35 U.S.C. § 284. On the record before us actual damages have not been determined.

In the case at bar, the district court stated from the bench, at the close of the proceedings:

I do not believe the infringement was willful. I think that the Kelley people, in the spirit of good competition, Rite-Hite came out with a product and they wanted to meet the product and they did the best they could and certainly did not intend to infringe on the patent, but I think the evidence compels me to find that they did.

*Rite-Hite*, 629 F.Supp. at 1045–46, 231 U.S. P.Q. at 161. The court subsequently discussed Rite-Hite's requests for multiple damages and attorney fees, and held that:

Under 35 U.S.C. § 284, multiplied damages up to three times the amount found or assessed may be awarded by the Court. Kelley's activities here do not warrant such an award.

*Id.*, at 1066, 231 U.S.P.Q. at 177. The court also held that:

The activities of Kelley and the circumstances of this case are not sufficiently exceptional to prompt an award of attorneys' fees under 35 U.S.C. § 285.

*Id.*

Rite-Hite urges that the finding that Kelley's infringement was not willful is incompatible with the court's other evidentiary findings, and must be reversed as clearly erroneous, citing *Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1577–79, 230 U.S.P.Q. 81, 89–91, *modified*, 793 F.2d 1565, 231 U.S.P.Q. 160 (Fed.Cir.1986), *cert. denied sub nom. Stora Kopparbergs Bergslags AB v. Crucible Inc.*, — U.S. —, 107 S.Ct. 882, 93 L.Ed.2d 836 (1987), and *CPG Products Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, 1015, 227 U.S. P.Q. 497, 502 (Fed.Cir.1985). Rite-Hite argues that "Kelley's conduct constituted copying and continued infringement after notice", and points to the absence from the record of any opinion of counsel to support Kelley's position that it believed its device did not infringe, although Kelley refers in its brief to such opinion. Rite-Hite asserts that the absence of the opinion was the result of Kelley attempting to claim its attorney-client privilege selectively, a posi-

tion supported by the record. The district court resolved the issue by holding that no opinion of Kelley's counsel would be entered into the record.

The weight that may fairly be placed on the presence or absence of an exculpatory opinion of counsel has varied with the circumstances of each case, and has not been amenable to development of a rigorous rule. Although in appropriate circumstances this court has upheld the drawing of adverse inferences on the question of willfulness, *Kloster Speedsteel AB*, 793 F.2d at 1580, 230 U.S.P.Q. at 91, we have observed that "[t]here is no *per se* rule that an opinion letter from patent counsel will necessarily preclude a finding of willful infringement, ... nor is there a *per se* rule that the lack of such a letter necessarily requires a finding of willfulness." *Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467, 472, 227 U.S.P.Q. 368, 372 (Fed.Cir.1985).

The district court found that there was copying, stating that "Kelley learned about and made its vertically moving hook through its examination and adoption of the Rite-Hite MDL–55 device and the related literature", conduct the court described as "imitation of the vertically moving hook and the other elements of the '847 patent". *Rite-Hite*, 629 F.Supp. at 1051, 231 U.S. P.Q. at 166. However, the copy was not exact, as discussed in connection with the "third means". Kelley argued that although the court found its third means to be "equivalent", its intention was to "design around" the Rite-Hite claims. It is not clear whether this was the basis for the district court's conclusion that Kelley "did not intend to infringe", *id.*, at 1046, 231 U.S.P.Q. at 161, but it weighs on the side of that conclusion.

In a determination of willfulness and its consequences, the totality of circumstances are considered. *See King Instrument Corp.*, 767 F.2d at 867, 226 U.S. P.Q. at 412; *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1390, 219 U.S.P.Q. 569, 576–77 (Fed.Cir. 1983). "Willfulness" in infringement, as in life, is not an all-or-nothing trait, but one of

degree. It recognizes that infringement may range from unknowing, or accidental, to deliberate, or reckless, disregard of a patentee's legal rights. The role of a finding of "willfulness" in the law of infringement is partly as a deterrent—an economic deterrent to the tort of infringement—and partly as a basis for making economically whole one who has been wronged, for example by assessment of attorney fees under 35 U.S.C. § 285.

 The term "willfulness" thus reflects a threshold of culpability in the act of infringement that, alone or with other considerations of the particular case, contributes to the court's assessment of the consequences of patent infringement. These consequences include the assessments provided by statute for multiplied damages and/or attorney fees. Whether or not "willfulness" is found, the court has authority to consider the degree of culpability of the tortfeasor.

The measure of damages, as indeed the assessment of attorney fees, provides an opportunity for the trial court to balance equitable concerns as it determines whether and how to recompense the successful litigant.

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201, 228 U.S.P.Q. 367, 369 (Fed.Cir.1986). Indeed, willfulness is not the only basis on which the court may find the case "exceptional" in the words of section 285, and on which the court may exercise its discretion. *See Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 449, 227 U.S.P.Q. 293, 298 (Fed.Cir.1985) ("[o]ther exceptional circumstances [than inequitable conduct] include willful infringement, misconduct during litigation, vexatious or unjustified litigation, or a frivolous suit."); *Bayer Aktiengesellschaft v. Duphar International Research B.V.*, 738 F.2d 1237, 1242, 222 U.S.P.Q. 649, 652 (Fed.Cir.1984).

 The factual question of whether the '847 patent was willfully infringed is reviewed under the clearly erroneous standard of Fed.R.Civ.P. 52(a). *See Underwater Devices*, 717 F.2d at 1389, 219 U.S.P.Q. at 576. To overturn a factual finding we must have a firm conviction that a mistake was committed by the district court. *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 855, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606 (1982). Rite-Hite has failed to convince this court that the district court clearly erred in its finding that Kelley did not willfully infringe the claims of the '847 patent. Neither willfulness nor other exceptional circumstance having been established, there was no basis for the exercise of the district court's discretion with respect to attorney fees. *S.C. Johnson & Son, Inc.*, 781 F.2d at 200–01, 228 U.S.P.Q. at 368–69; *Reactive Metals and Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582, 226 U.S.P.Q. 821, 824 (Fed.Cir.1985).

 The district court's refusal to award Rite-Hite multiple damages under 35 U.S.C. § 284 will not be overturned absent a clear showing of abuse of discretion. *See Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1547–48, 221 U.S.P.Q. 1, 8 (Fed.Cir.1984). A finding of willfulness does not always lead to the award of increased damages and attorney fees. A trial court's exercise of discretion in the circumstances before it is "informed by the court's familiarity with the matter in litigation and the interest of justice." *S.C. Johnson & Son, Inc.*, 781 F.2d at 201, 228 USPQ at 369. On this basis, we affirm the district court's rulings.

### Fees on Appeal

Rite-Hite requests costs and attorney fees on this appeal, asserting that Kelley misrepresented the record, presented arguments as to the Taylor reference that were not before the district court, and misrepresented the district court's findings. Rite-Hite has not, however, sufficiently supported these charges, nor established that Rule 38 of the Federal Rules of Civil Procedure has been violated.

 Although Kelley faced the appellate burden on the issues of validity and infringement, its request for appellate review was not frivolous and we do not consider this appeal to be in the category of "exceptional case" in terms of 35 U.S.C.

§ 285. The request for attorney fees is denied.

No costs are awarded on the appeal or cross-appeal.

AFFIRMED. ·