DURANGO ASSOCIATES, INC. and
DND Corporation,
Plaintiffs–Appellees,

v.

REFLANGE, INC.,
Defendant–Appellant,

and

Climax Portable Machine Tools,
Inc., Defendant.

DURANGO ASSOCIATES, INC. and
DND Corporation,
Plaintiffs–Appellees,

v.

REFLANGE, INC., Defendant,

and

Climax Portable Machine Tools, Inc.,
Defendant–Appellant.

Nos. 86–1516, 86–1517.

United States Court of Appeals,
Federal Circuit.

April 1, 1988.

Guy E. Matthews, of Guy E. Matthews, P.C., Houston, Tex., argued, for plaintiffs-appellees.

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., argued, for defendant-appellant. With him on the brief, were Herbert H. Mintz and Reid G. Adler. Also on the brief, were Michael O. Sutton, Arnold, White & Durkee, of Houston, Texas and James S. Leigh, Klarquist, Sparkman, Campbell, Leigh & Whinston, Portland, Or.

Before FRIEDMAN and SMITH Circuit Judges, and SKELTON, Senior Circuit Judge.

EDWARD S. SMITH, Circuit Judge.

This case involves a patent infringement action by DND Corporation (DND) and Durango Associates, Inc. (Durango), against Reflange, Inc. (Reflange), and Climax Portable Machine Tools, Inc. (Climax). The United States District Court for the Southern District of Texas concluded that patent Nos. 3,762,246 ('246 patent) and 3,772,944 ('944 patent) were valid. 629 F.Supp. 443. The court found that claim 3 of the '246 patent was infringed by Climax's model FF 618 and that claim 1 of the '944 patent was infringed by models FF 618 and LFF 1840. The court also found that claims 1 and 7 of the '246 patent were not infringed by the FF 618 and the LFF 1840 and that claim 3 of the '246 patent was not infringed by the LFF 1840. Climax and Reflange appeal from the district court's judgment of in-

fringement.[1] We affirm in part, vacate in part, and remand.

## Issues

(1) Whether the district court erred in finding claim 3 of the '246 patent infringed by Climax's model FF 618.

(2) Whether the district court erred in finding claim 1 of the '944 patent infringed by Climax's models FF 618 and LFF 1840.

## Background

### 1. *The Technology.*

The patents in this case involve portable flange facing machines. A flange is a rim on the end of a pipe which projects at right angles to the pipe so that one pipe can be attached to another, usually with bolts. In order to maintain a good seal between the two pipes, the flange faces must be fairly smooth. The faces will wear with use, so they must be resurfaced periodically. Frequently, this must be done with the pipe in place, so a portable flange facer is necessary.

### 2. *The Patents.*

The '246 patent was issued on October 2, 1973, to Anthony F. Becker and was assigned to DND. It contains 8 claims, only 1 of which, claim 3, is asserted to be infringed.[2] The application which became the '246 patent originally contained a single independent claim, application claim 1, which broadly claimed the combination of a flange facer with a support column and base, attachment means for mounting it in the bore of a flanged pipe, and a means responsive to the rotation of a rotatable frame for automatically and continuously feeding a cutting tool radially with respect to the bore of the flanged pipe. Application claim 2 depended from application claim 1 and added the limitation that the base and support column be separate and including means for releasably attaching the support column to the base. Application claim 7 depended from application claim 2 and added the further limitation that the means for releasably attaching the support column to the base include means for expanding the base internally of the support column after the base has been aligned relative to the pipe. Application claims 1 and 2 were rejected as being anticipated by a previous patent, the Henderson patent, but application claim 7 was deemed allowable if rewritten in independent form. The amended claim was allowed as patent claim 3. Application claim 2 was later allowed after the addition of the limitation that the securing means be releasably attached to the support column to permit the mounting of the support column on the base after attachment to the pipe wall. (See Fig. 1.)

1. Durango cross-appealed from the judgment in Appeal No. 87–1552. This appeal was dismissed on February 10, 1987, after Durango failed to address the issues of the cross-appeal in its brief.

2. Claim 3 of the '246 patent reads as follows:
"3. A flange facing machine for facing a flange on a tubular member, comprising:
"a base adapted to fit within the bore of a tubular member having a flange thereon which is to be faced;
"a support column separate from and mounted on said base;
"means for releasably attaching said support column to said base;
"attachment means for releasably securing said base to the inner wall of the tubular member;
"a rotatable frame mounted on said support column for rotation relative thereto;
"a facing tool secured to said rotatable frame for rotational movement therewith;
"power means for rotating said rotatable frame;
"means operable in response to the rotation of said rotatable frame for automatically and continuously feeding said facing tool substantially radially with respect to the bore of the tubular member as said tool is rotated; and
"said means for attaching comprising means for expanding said base internally of said support column after said base has been aligned relative to the tubular member for thereby locking said support column to said base in alignment therewith and with the tubular member."

1352

Fig. 1

Expander
Plug

Support Column

Base

Flange →

Bore

# Flange Facing Machine ('246 Patent)

The '944 patent was issued on November 20, 1973, to Becker, *et al.*, and was assigned to DND. It contains a single claim.[3] The application which became the '944 patent was originally filed as a continuation-in-part of the application that became the '246 patent. This status was denied because the applications involved different inventive entities. The application originally contained 14 claims, which were rejected on a variety of grounds, one of which was a rejection of several claims as anticipated by

3. Claim 1 of the '944 patent reads as follows:
"1. A flange facing machine for facing a flange on a tubular member, comprising:
"a tubular support column having a base therewith adapted to fit within the bore of a tubular member having a flange thereon which is to be faced;
"attachment means for releasably securing said base to the inner walls of the tubular member;
"a rotatable tubular frame mounted on and surrounding said support column for rotation relative thereto and extending for substantially the full length of said support column;
"a facing tool secured to said rotatable frame for rotational movement therewith;

"power means for rotating said rotatable frame;
"means operable in response to the rotation of said rotatable frame for automatically and continuously feeding said facing tool substantially radially with respect to the bore of the tubular member as said tool is rotated;
"a power means support cap disposed at the upper end of said support column; and
"a single bolt vertically disposed and extending into the bore of said support column and releasably secured thereto to attach said support cap and power means to said support column, said bolt having an external diameter approximately the same size as the internal diameter of said bore of said support column."

the Henderson patent. All of the original claims were canceled and claims 15–20 were introduced. Claim 1 of the '944 patent was derived from application claims 18 and 20. Application claim 20 depended from application claim 18 and included two additional limitations:

The structure set forth in claim 18, including:

a power means support cap disposed at the upper end of said support column; and

a single bolt vertically disposed and extending into the bore of said support column and releasably secured thereto to attach said support cap and power means to said support column, said bolt having an external diameter approximately the same size as the internal diameter of said bore of said support column.

In support of the patentability of application claim 20 over the Henderson patent, the applicant's attorney argued that:

Claim 20 is directed to a specific feature of the present invention relating to the mounting of the power means utilizing a single bolt at the upper end of the support column. This unique and unobvious arrangement provides the strength and support necessary to support the motor or power means on the support column in a position for driving the tubular frame. There is no comparable structure in the Henderson et al patent and therefore claim 20 is submitted to be allowable along with claim 18 and the other claims.

Application claim 18 was rejected by the examiner, but application claim 20 was deemed allowable subject to being rewritten in independent form to include the limitations of application claim 18. The claim as amended was allowed as claim 1 of the '944 patent. (See Fig. 2.)

## Fig. 2

**Flange Facing Machine ('944 Patent)**

3. *The Climax Machines.*

Climax has manufactured and sold two portable bore-mounted flange facers: models FF 618 and LFF 1840. The FF 618 is designed to be used in smaller bore pipes than the LFF 1840. Both models have a base, or chuck, and an essentially solid support column which are connected at the factory by screws threaded through the base into the bottom of the support column, which is also called the spindle. The base and column are mounted and aligned as a unit within the pipe to be refaced using jaws which project laterally from the base against the inside wall of the pipe. The jaws are adjusted differently in the two models. In the FF 618, the jaws are adjusted with remote chuck jaw adjustment screws and associated actuating rods which permit the jaws to be adjusted from the top of the machine. The jaws in the LFF 1840 must be adjusted at the base within the pipe. The support cap is attached to the column with a tapered split ring bushing which is placed over the column and forced against the support cap using set screws. (See Fig. 3.)

Fig. 3

Tapered Split Ring Bushing

Support Column

Flange

Chuck Jaw

Base

←Bore

The Climax FF 618 Machine

4. *The Litigation.*

Climax decided to market a portable flange facing machine in 1975. DND notified Climax in August 1976 that its machines apparently infringed one or more claims of the '246 and '944 patents. Climax responded that it was consulting with its patent counsel and that it did not intend to infringe. Climax's patent attorney advised Climax that its design did not infringe the patents without ordering or analyzing the file histories of the patents. In September 1976, Climax informed DND of its position that it did not infringe the patents.

DND wrote to Climax in early 1978, again alleging infringement of the two patents. Climax again denied infringement and requested more information.

In 1980, Durango, the exclusive licensee under the patents, notified Reflange, a distributor of Climax machines, of its apparent infringement of the patents based on its sale of the Climax portable flange facers. DND and Durango filed suit against Reflange for infringement in 1981. Climax moved to intervene as a defendant in the action because of Reflange's limited resources and because it feared the adverse effects of a finding of infringement against Reflange based on its sale of Climax machines.

DND and Durango initially alleged that models FF 618 and LFF 1840 infringed claims 1, 3, and 7 of the '246 patent and claim 1 of the '944 patent. At trial, they withdrew the allegation of infringement of claims 1 and 7 of the '246 patent by the FF 618 and the LFF 1840 and the allegation of infringement of claim 1 of the '944 patent by the LFF 1840. Climax counterclaimed for a declaratory judgment that the patents were invalid, or, if valid, were not infringed.

■ The district court found that the inventions claimed in the '246 and '944 patents were not disclosed in the prior art, and concluded that they would not have been obvious to one of ordinary skill in the art. The court concluded that the patents were "valid,"[4] and Climax does not contest the conclusion of validity.

The district court found that model FF 618 infringed claim 3 of the '246 patent and that models FF 618 and LFF 1840 infringed claim 1 of the '944 patent. In response to Climax's counterclaims, the court found that neither model infringed claims 1 or 7 of the '246 patent and that model LFF 1840 did not infringe claim 3 of the '246 patent. Climax appeals from the finding of infringement.

### The '246 Patent

First, it is necessary to determine whether the district court found literal infringement or infringement under the doctrine of equivalents. The district court stated that "each element of claim 3 of the '246 Patent, or its equivalent, is contained in the FF 618 flange facing machine." Climax contends

that it is unclear from this statement whether the district court found literal infringement, infringement under the doctrine of equivalents, or both. While it is true that the district court did not explicitly state that it found literal infringement, it is clear from what the court did that that is what it found. Claim 3 is written in means-plus-function form, and the particular limitation at issue is in that form. The court compared the structure of the accused device with that disclosed in the specification. Thus, it is clear that the equivalence the court referred to in its opinion was equivalence under 35 U.S.C. § 112, ¶ 6.

Climax contends that the district court erred in interpreting claim 3 of the '246 patent. Climax argued that claim 3 requires a 2-step installation, first aligning the base within the pipe followed by mounting the support column on the base, and, since its machines were incapable of 2-step installation, they could not infringe. The district court rejected this argument, finding it to be "without merit." Climax argues that the district court did not understand its argument and erred as a matter of law in interpreting the claim in a way which did not require 2-step installation.

■ Claim interpretation is a question of law and is freely reviewable on appeal.[5] In interpreting a means-plus-function claim, several factors may be considered, including the language of the claim, other claims in the patent, the specification, the prosecution history, and expert testimony.[6] The district court did not err in interpreting claim 3. Contrary to Climax's assertion,

---

**4.** Patents are presumed to be valid, and the burden of proving invalidity rests on the challenger. 35 U.S.C. § 282 (1982 and Supp. III 1985); see D.M.I., Inc. v. Deere & Co., 802 F.2d 421, 427, 231 USPQ 276, 280 (Fed.Cir.1986). If that burden is not met, the appropriate conclusion is that the patent was not shown to be invalid. A patent should not be declared "valid" by a court because other challengers may be able to prove invalidity using different evidence. Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1534 n. 3, 218 USPQ 871, 875 n. 3 (Fed.Cir. 1983).

**5.** Raytheon Co. v. Roper Corp., 724 F.2d 951, 956, 220 USPQ 592, 596 (Fed.Cir.1983), cert.

denied, 469 U.S. 835, 105 S.Ct. 127, 83 L.Ed.2d 69 (1984); D.M.I., Inc. v. Deere & Co., 755 F.2d 1570, 1573, 225 USPQ 236, 238 (Fed.Cir.1985).

**6.** Rite–Hite Corp. v. Kelley Co., 819 F.2d 1120, 1123, 2 USPQ2d 1915, 1917 (Fed.Cir.1987); Texas Instruments, Inc. v. United States Int'l Trade Comm'n, 805 F.2d 1558, 1568, 231 USPQ 833, 839 (Fed.Cir.1986); King Instrument Corp. v. Otari Corp., 767 F.2d 853, 862, 226 USPQ 402, 408 (Fed.Cir.1985), cert. denied, 475 U.S. 1016, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986); Palumbo v. Don–Joy Co., 762 F.2d 969, 975, 226 USPQ 5, 8 (Fed.Cir.1985).

nothing in claim 3 requires mounting the support column on the base after the base has been aligned. The claim states in part:

means for releasably attaching said support column to said base;

\* \* \* \* \* \*

said means for attaching comprising means for expanding said base internally of said support column after said base has been aligned relative to the tubular member for thereby locking said support column to said base in alignment therewith and with the tubular member.

All that these limitations require is that expansion of the base within the column occur after the base has been aligned. They contain no limitation on whether the support column is mounted on the base before or after alignment.

Climax argues that the specification and prosecution history of the claim require the 2–step installation. The specification does describe the installation in terms of a 2–step process, but nothing in the specification limits the claims to such an interpretation. In addition, Climax's argument based on the prosecution history of application claim 2 is misplaced. It is true that application claim 2 was amended to include the limitation that:

said base and said support column are separate from each other, and including wherein;

said securing means is releasably attached to said support column for permitting mounting of said support column on said base after said attachment means is secured to the inner wall of the tubular member.

However, this has no effect on the interpretation of claim 3. Claim 3 was based on application claim 7. Although application claim 7 originally depended from application claim 2, it was deemed allowable by the examiner prior to the amendment of application claim 2. The subsequent addition of limitations to application claim 2 to obtain its allowance has no effect on the interpretation of application claim 7 and, therefore, no effect on claim 3.

■ The determination whether an accused device is a section 112 equivalent of the described embodiment is a question of fact.[7] It can be reversed only if it is clearly erroneous.[8] A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." [9]

In determining equivalence under section 112, the "sole question is whether the single means in the accused device which performs the function stated in the claim is the same as or an equivalent of the corresponding structure described in the patentee's specification as performing that function." [10] "[T]he court must compare the accused structure *with the disclosed structure*, and must find equivalent *structure* as well as *identity* of claimed *function* for that structure." (Emphasis in original.) [11] Here, the district court set out in detail the structure in Climax's machines which it found to be the equivalent of the tapered threaded plug disclosed in the patent specification.

Climax contends that, although the district court cited generally to the testimony of two witnesses in support of its finding

7. *Hartness Int'l, Inc. v. Simplimatic Eng'g Co.,* 819 F.2d 1100, 1110, 2 USPQ2d 1826, 1833 (Fed. Cir.1987); *King Instruments,* 767 F.2d at 862, 226 USPQ at 408; *Palumbo,* 762 F.2d at 975, 226 USPQ at 8.

8. *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1269–70, 229 USPQ 805, 811 (Fed.Cir. 1986), *cert. denied,* — U.S. —, 107 S.Ct. 875, 93 L.Ed.2d 829 (1987); *ACS Hospital Sys., Inc. v. Montefiore Hospital,* 732 F.2d 1572, 1582, 221 USPQ 929, 936 (Fed.Cir.1984).

9. *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

10. *D.M.I.,* 755 F.2d at 1575, 225 USPQ at 239.

11. *Pennwalt Corp. v. Durand–Wayland, Inc.,* 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed.Cir. 1987), *cert. filed,* No. 87–1228 (January 22, 1988).

of equivalence,[12] the court's analysis came from Durango's post-trial brief, and there was no testimony in the record to support it. It is true that Durango's brief contains language similar to that which appears in the district court's opinion. However, contrary to Climax's statements, the testimony of the witnesses whom the court identified in its analysis supported the finding of equivalence. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."[13] Therefore, the district court's finding of equivalence was not clearly erroneous.

### The '944 Patent

The district court found that the FF 618 and the LFF 1840 did not literally infringe claim 1 of the '944 patent but did infringe under the doctrine of equivalents.

■ Climax argues that the district court's interpretation of claim 1 was in error. We agree. In its opinion, the court stated that "the specific means cited in Claim 20 is not a limiting factor as to the means for attaching the power support cap to the support column." It is not true that a limitation which appears in the claim, and which was specifically added to distinguish the prior art, does not provide *any* limitation of the range of equivalents. The power means support cap and the single bolt arrangement are limitations of claim 1 which must be considered in evaluating whether Climax's machines infringe the '944 patent. However, merely because a claim was narrowed during prosecution does not mean that the patentee is precluded from relying on the doctrine of equivalents under any circumstances.[14] The district court must determine whether the Climax machines infringe claim 1 of the '944 patent as properly interpreted.

■ Durango apparently concedes that the district court erred, but attempts to avoid this error by claiming that the district court's findings should be reviewed, not its opinion. According to Durango, since the court found that Climax's tapered split ring bushing was the equivalent of the single bolt in the patent, that finding is all this court should review. The problem with this argument, as Climax pointed out in its reply brief, is that the court's finding of equivalence is based on an erroneous interpretation of claim 1. Claim interpretation being a question of law, we are free to review the district court's interpretation and to correct it.

In its analysis of infringement under the doctrine of equivalents, the district court interpreted the prior art Henderson patent. Climax contends that the district court's interpretation was in error. In its findings, the court stated that:

> In Henderson, the power support cap was supported by a rotatable collar which lies between the support cap and the cone. Figure 1 of the Henderson patent reveals that the rotatable member (L) could not rotate between the collar (U) and the cone (F) when the nut (V) was tightened sufficiently to render the entire device stable enough to cut a flange.

The court relied on the testimony of Durango's president that neither the drawing nor the description showed anything extending up from cone F around which the frame L would rotate. However, the drawing clearly shows the cylindrical upper portion of the cone. The bolt B, which extends the length of the Henderson machine, is shown in dotted lines from the bottom of cone F, through the unlettered upper portion of the cone, and on through the collar U and the nut V. If the upper portion of the cone were not there, the bolt would have been shown in solid lines in that part of the

---

12. The transcript of the trial was not prepared until after the court's opinion came out. Therefore, in its findings, the court cited the testimony generally by the witnesses' names, rather than specifically pointing out the relevant testimony by page numbers.

13. *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

14. *Pennwalt,* 833 F.2d at 939 n. 2, 4 USPQ2d at 1743 n. 2; *Bayer Aktiengesellschaft v. Duphar Int'l Research B.V.,* 738 F.2d 1237, 1243, 222 USPQ 649, 653 (Fed.Cir.1984).

drawing. In addition, there is a dotted line across the top of the upper portion of the cone indicating the top of frame L. Therefore, when the nut V is tightened down on the collar U, the collar rests on the upper portion of the cone, and the frame L is able to rotate freely. (See Fig. 4.) On remand, the district

## Fig. 4

The Henderson Patent

court must consider the question of infringement in light of the Henderson patent as properly interpreted.

### Conclusion

The district court's finding of infringement of the '246 patent by Climax's model FF 618 was not clearly erroneous and is affirmed. The district court erred in interpreting claim 1 of the '944 patent and the Henderson prior art reference. Therefore, its finding of infringement by Climax's models FF 618 and LFF 1840 must be vacated, and the case remanded to the district court for findings on the issue of infringement under the doctrine of equivalents based on the properly interpreted claim and prior art. The judgment of the United States District Court for the Southern District of Texas is affirmed in part, vacated in part, and remanded.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.