**BRAUN INC., and Braun Aktiengesellschaft, Plaintiffs,**

v.

**DYNAMICS CORPORATION OF AMERICA, Defendant.**

**Civ. No. B-88-65 (TFGD).**

United States District Court, D. Connecticut, Bridgeport Division.

April 19, 1991.

---

Patrick J. Monahan, Shaun S. Sullivan, Lynn A. Kappelman, Wiggin & Dana, New Haven, Conn., Charles Hieken, Fish & Richardson, Waltham, Mass., Heidi E. Harvey, Boston, Mass., Steven E. Lipman, Washington, D.C., for plaintiffs.

Michelle deGarmeaulx, James R. Hawkins, II, Robinson & Cole, Stamford, Conn., Martin M. Zoltick, Stuart J. Friedman, Daniel W. Sixbey, Mark W. Binder, Sixbey, Friedman, Leedom & Ferguson, McLean, Va., for defendant.

## RULING ON POST–TRIAL MOTIONS

DALY, District Judge.

### Introduction

This patent and trademark case presents a dispute between competing manufacturers of hand-held kitchen blenders. The parties tried this case to a jury beginning December 6, 1990. On December 18, 1990, the jury returned verdicts on all counts for plaintiffs, finding that defendant had infringed plaintiffs' design patent, had done so willfully, and that plaintiffs' patent was valid. *See* 35 U.S.C. §§ 271, 281. The jury also found that defendant had infringed plaintiffs' trade dress in the design of its hand-held blender, as well as in its product's packaging. *See* 15 U.S.C. § 1125(a). Finally, the jury found that defendant had violated Connecticut unfair competition law in "passing off" its blender as plaintiffs', and that defendant's acts violated the Connecticut Unfair Trade Practices Act ("CUTPA"). *See* CONN.GEN.STAT. § 42–110a. The jury awarded plaintiffs $737,948 in total damages.

Upon receiving the jury's verdicts, the Court entered a Temporary Injunction, enjoining defendant from continuing to market and sell its model HHB 72–1 hand-held blender. On January 14, 1991, the Court entered a permanent injunction. Defendant has now moved for judgments notwithstanding the verdicts, or for a new trial. Plaintiffs have moved for an accounting, pre- and post-judgment interest, treble damages and attorney fees.

### Discussion

1. *Defendant's Motion For Judgments Notwithstanding The Verdicts Or For A New Trial.*

■ A judgment notwithstanding the verdict may be entered pursuant to Federal Rule of Civil Procedure 50(b) only if the evidence, when viewed in a light most favorable to the nonmovant, without regard to credibility or weight, reasonably permits an outcome only in the movant's favor. *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 573 (2d Cir.1982).

■ A court may grant a new trial for a variety of reasons, including that the verdict is against the weight of the evidence, that damages are excessive, that the verdict is inconsistent, that substantial errors were made in admitting or excluding evidence, or in charging the jury, or that a material issue was improperly submitted or withdrawn from the jury. *See* FED. R.CIV.P. 59; 6A J. MOORE, J.D. LUCAS, MOORE'S FEDERAL PRACTICE ¶¶ 59.- 01–59–17 (2d ed. 1989).

Defendant challenges each of the jury's verdicts on various grounds. Upon full review of the evidence adduced at trial and the applicable law, the Court finds no merit in any of defendant's contentions. The Court shall not recount completely all of the evidence, nor shall it re-issue each of the many rulings it made both before and during trial. Nevertheless, the Court shall address defendant's contentions *seriatim*, and, where appropriate, provide examples of evidence admitted for the jury's consideration in support of each of plaintiffs' claims. The Court notes specifically, however, that in ruling upon this motion, it relies upon the entire record in this case, and not simply upon the few examples of testimony or exhibits it here tenders.

(a) Waring's Willful Infringement

■ Waring contends that, in view of the totality of the evidence, including that it obtained an exculpatory opinion of counsel upon which it relied, Braun has failed to satisfy its burden in proving willful infringement.

On this issue, the Court instructed the jury that:

[a]s to willfulness, where a potential infringer has actual notice of another's patent rights, it has an affirmative duty to exercise due care to determine whether or not it is or will be infringing. Such an affirmative duty includes taking steps

to obtain a good faith belief that the new design will not infringe another's design. An important consideration in this inquiry is whether a potential infringer obtained competent legal advice from counsel on the question of infringement. I caution you, however, that not every failure to seek the opinion of counsel requires a finding of willfulness. Nor does the fact that an opinion of counsel was obtained dictate a finding of non-willfulness. You must look to the totality of circumstances to determine whether the defendant had a good-faith belief that it was not infringing Braun's patent. On this question of willfulness, the plaintiff bears the burden of proving to you by clear and convincing evidence that the defendant lacked such a good faith belief, and willfully infringed Braun's patent.

The Court finds that ample evidence was presented to the jury to permit it to find that plaintiffs met their burden. Although the evidence indicates that Waring corresponded on several occasions with Attorney Sixby, its patent attorney, even the content of these letters, which defendant contends gave it the "green-light" to proceed with the blender project, suggest willful infringement. The evidence at trial included that Attorney Sixby requested specifically to see a view of the entire outside configuration of the defendant's proposed blender. Nevertheless, Waring failed to comply with this request until after it had already authorized the project. The jury also heard much testimony indicating that, prior to creating its blender, defendant was well aware of plaintiffs' product and patent. Furthermore, the jury heard evidence which suggested that defendant's marketing strategy included taking advantage of plaintiffs' advertising campaign. This evidence, in combination with the fact that the jury had ample opportunity to view both blenders and their respective packaging, provided more than sufficient evidence from which the jury could have concluded that defendant infringed plaintiffs' patent deliberately and intentionally, and thus willfully. Accordingly, the Court shall not

set aside the jury's verdict as to willfulness.

### (b) Damages

■ Defendant contends that since the jury's award of $737,948 exceeds the amount calculated by Braun's own expert—$687,832—the jury must have engaged in impermissible speculation. Therefore, according to defendant, the jury committed legal error in calculating damages, and a new trial must be granted.

The Court instructed the jury, in pertinent part:

If you have found for Braun on the first claim, you may award the plaintiff the defendant's total profits resulting from the sale of the infringing device. As I have said, the plaintiffs bear the burden of proving what those total profits are. To determine what the defendant's profits were, you must consider Waring's total pre-tax profits from the sale of the HHB 72–1 and then subtract any expenses which you find attributable to the Waring HHB 72–1 incurred in generating those profits. Once you have determined the appropriate damages award, you must also award interest on this amount which would have accumulated between the date Waring began manufacturing its HHB 72–1 and the date of the trial. You must apply an interest rate of 8 percent.

The jury interrogatories to which the parties agreed asked the jury to calculate profit in a given year as gross revenues less any costs attributable to the HHB 72–1. The parties stipulated that defendant's total revenue relating to the product was approximately $2.5 million. An issue of contention at trial was which costs incurred by defendant were attributable specifically to the product, and for which years. For example, Braun's expert testified that actual costs for advertising should be included in the calculation. Applying figures from Waring's financial statement, he assessed costs of $154,000 for Waring's advertising. Nevertheless, the jury had already heard testimony that promotional advertising was not specific to the HHB 72–1, and that

Waring had only placed four trade ads for its product, totalling costs of $9,000. The jury was free to reject costs which plaintiffs' expert had assessed against revenues if it felt them unwarranted. Instead of simply choosing one of two expert's opinions, the jury most probably conducted its own inquiry, as the Court had instructed. Accordingly, there was sufficient evidence for the jury to reach its result as to damages.

### (c) Trade Dress in Plaintiffs' Blender and Packaging

■ Defendant argues that plaintiffs failed to present sufficient evidence from which a reasonable jury could conclude that either its product, or its packaging had acquired a secondary meaning or would cause a likelihood of confusion. Defendant also contends that plaintiffs failed to provide sufficient evidence to permit a jury to conclude that the design of the Braun blender was non-functional.

The Court finds defendant's arguments specious, and simply a rehash of its closing argument.

### (i) Secondary Meaning

The Court instructed the jury, in part, that:

> Braun bears the burden of establishing by a preponderance of the evidence that the purchasing public associates Braun's product's trade dress with a single source, rather than just the product itself. It is not necessary that consumers know which specific company produced the goods. As long as consumers identify the trade dress with a single source, there is secondary meaning. In determining whether Braun's trade dress has developed a secondary meaning, you should consider, among other things, the amount of money spent on advertising to make consumers associate the product design with a single source, as well as the effect of such advertising, whether the product is a commercial success, whether the product has received unsolicited media coverage, and, significantly, whether there have been deliberate attempts to copy the product design or

packaging. No one factor is dispositive; you may consider them all.

The jury heard testimony indicating that plaintiffs' packaging was displayed on store shelves in full view of the public. The jury also heard ample evidence concerning the plaintiffs' vast expenditures on advertising. Indeed, the jury saw this advertising, both the print ads, and the video commercials. Particularly significant, as well, in any inquiry concerning secondary meaning is the jury's finding that defendant intentionally copied plaintiffs' product in an attempt to pass off its product as its own. *See Harlequin Enter. Ltd. v. Gulf & Western Corp.*, 644 F.2d 946, 950 (2d Cir. 1981). In view of all of this evidence, the Court cannot conclude that the jury acted unreasonably in finding that plaintiffs' product and packaging had acquired a secondary meaning.

The Court further finds meritless defendant's contention that the Court erred in failing to give the instruction that secondary meaning can only be found if the jury finds that "purchasers are moved to buy it [the Braun blender or packaging] because of its source." The Court considered this request at the charging conference, and there ruled extensively on this matter. The Court remains convinced that its charge fairly stated the law on the requirement of secondary meaning, *see id.* at 949, 950, and adheres to its earlier ruling.

### (ii) Likelihood of Confusion

Defendant contends that plaintiffs failed to establish a likelihood of confusion in that they provided no examples of actual consumer confusion, and, indeed, could not have done so in view of the differences in the shapes of the blenders, and clear labelling. The short answer to this challenge is that the jury had both blenders and their respective packagings for comparison when it reached its verdicts, and was competent to make that judgment, in part, simply on the basis of its own comparison. In any event, there was also substantial testimony from design experts about the similarities in the "wineglass" shape shared by both blenders' lower portions. This feature was prominent in plaintiffs' advertising, and a

jury may well have concluded that a consumer viewing defendant's product would recall plaintiffs' advertisements. The jury's finding of willful infringement is also significant in this context. *Harlequin Enter.*, 644 F.2d at 949 ("Evidence of conscious imitation is pertinent because the law presumes that an intended similarity is likely to cause confusion.") (citations omitted).

The jury may have found the similarities in the packaging of both products striking as well. Much testimony at trial concerned extensive comparisons of the boxes in which each party packaged its respective blender. Defendant's suggestion that the Court erred in allowing the jury to view enlarged photographs of certain portions of packaging is without merit in view of the Court's instruction that the jury must consider the effect of the packaging and its appearance as a whole. Defendant's suggestion that the Court erred in refusing to instruct the jury that it could not consider, for purposes of likelihood of confusion, those aspects of the plaintiffs' packaging for which Waring had priority of use is unsupported, and was addressed by the Court at the charging conference. Whether or not defendant had priority of use as to parts of Braun's packaging was challenged with evidence at trial from plaintiffs, and was presumably considered by the jury. Moreover, a challenge to particular parts of plaintiffs' packaging seems to fly in the face of the Court's instruction and defendant's own contention that the packaging must be considered as a whole. In sum, the Court cannot find that the jury acted unreasonably in finding their appearances likely to cause confusion.

### (iii) Design Functional or Ornamental

As to this issue, defendant contends simply that the testimony of the design experts at trial was that each of the elements of the plaintiffs' product was primarily functional. Therefore, defendant claims, it carried its burden of demonstrating functionality, and plaintiffs were precluded from receiving a favorable verdict on their claim for trade dress infringement addressed to the product's appearance. *See*

*LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 76 (2d Cir.1985) (functionality is defense to suit under Section 43(a) of the Lanham Act).

Defendant ignores, however, testimony that plaintiffs' blender was designed to be aesthetically pleasing, and appeared to be a "friendly" item, unlike other blenders with exposed blades. Indeed, the jury was shown various other models which accomplish quite similar functions, yet look strikingly different from the Braun blender. Accordingly, there was ample evidence from which a jury could determine that defendant failed to carry its burden, and that those portions of the design of the plaintiffs' blender which were appropriated by defendant's design were ornamental in nature.

For all of these reasons, defendant's contentions that there was insufficient evidence to support the jury's verdicts as to trade dress infringement are without merit. Since defendant's arguments concerning the state law claims also depend upon these contentions, these arguments are similarly hollow.

As defendant has not shown that it is entitled to prevail on any of its claims for judgment notwithstanding the verdict, or for a new trial, defendant's motion in this regard is DENIED.

### 2. Plaintiffs' Motion For Accounting, Pre–Judgment Interest, and Post–Judgment Interest.

As the parties have determined and agreed upon appropriate interest figures for the relevant years, and have agreed that defendant shall account for its unit sales of the HHB 72–1 hand-held blender after September 30, 1990, through the date of full compliance with the injunction entered by the Court on December 18, 1990, and as they have also agreed upon the multiplier to be utilized in then determining damages due plaintiffs for such sales, this motion is hereby GRANTED and the parties are hereby ORDERED, pursuant to their request, to submit an appropriate form of order for the Court's review so

that the Court may award plaintiffs such damages.

### 3. Plaintiffs' Motion For Treble Damages and Attorney Fees and Costs.

■ Title 35 of the United States Code, Section 284 provides that upon a finding for the claimant in a patent infringement suit, a court may increase damages found to have been suffered as a result of the infringement by up to three times the amount so found. Such a decision is left entirely to the discretion of the trial court, *see Rite–Hite Corp. v. Kelley Co.*, 819 F.2d 1120, 1125–26 (Fed.Cir.1987), and should be based upon the Court's careful consideration of equitable concerns, including an infringer's intentions. *Id.* Generally, courts will only award treble damages upon a finding of willful infringement. Such a finding is sufficient by itself to support an award of increased damages. *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 628 (Fed.Cir.1985). A finding of willfulness does not mandate a trebling of damages, however. *Rite–Hite*, 819 F.2d at 1126. Here, in response to a specific interrogatory, the jury found that defendant's infringement of Braun's design patent was willful.

■ Defendant urges nevertheless that the Court should not award plaintiffs treble damages. Defendant argues at length that it relied in good faith upon the opinion of its experienced patent attorney. The jury already considered such evidence, however, and nevertheless found that defendant's infringement was willful. To reconsider the jury's decision at this stage, beyond the consideration already given this issue in the Court's Ruling on defendant's motion for judgment notwithstanding the verdict or a new trial, *see supra* pp. 35–36,

would usurp the jury's function—and that the Court shall not do. As described above in detail, plaintiffs presented sufficient evidence to allow a reasonable jury to find that defendant acted willfully in infringing plaintiffs' patent. Accordingly, the finder of fact has spoken as to the defendant's intentions.

Defendant also suggests that since the jury awarded damages pursuant to 35 U.S.C. § 289,[1] the treble damages provision which accompanies 35 U.S.C. § 284 is not available. Defendant offers no explanation as to why its construction of these two provisions is appropriate.

Case law considering these two provisions in conjunction is sparse. Those courts which have addressed their relationship have noted that section 289 is an additional remedial option available only to owners of design patents which have been infringed, such as plaintiffs'. *See Schnadig Corp. v. Gaines Mfg. Co.*, 620 F.2d 1166, 1168 (6th Cir.1980). Sections 284 and 289 each set forth a separate means of calculating damages to be awarded to a victim of infringement. As to the base recovery for a plaintiff, section 284 provides that a plaintiff may recover "compensation" for the infringement not less than a reasonable royalty, whereas section 289 provides that a plaintiff may recover an infringer's "total profit" but not less than $250. In both *Henry Hanger & Display Corp. v. Sel–O–Rak Corp.*, 270 F.2d 635 (5th Cir.1959), and *Bergstrom v. Sears, Roebuck and Co.*, 496 F.Supp. 476 (D.Minn. 1980), the courts ruled that a plaintiff could not recover both "damages" under section 284 and profits under section 289. The section 284 "damages" considered in each case, however, did not include enhanced or trebled damages. In *Sel–O–Rak*, the district court had awarded both profits and a

---

1. Section 289 provides:

   **§ 289. Additional remedy for infringement of design patent**

   Whoever during the term of a patent for a design, without license of the owner, (1) applies the patented design, or any other colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied

   shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.

   Nothing in this section shall prevent, lessen, or impeach any other remedy which an owner of an infringed patent has under the provisions of this title, but he shall not twice recover the profit made from the infringement.

royalty of 20% of the sales price of the product there in issue. 270 F.2d at 643. On appeal, the Fifth Circuit ruled that since the district court had awarded profits under section 289, it could not also award a royalty under section 284. *Id.* at 279–80. Significantly, however, the Fifth Circuit saved for a separate section of its opinion its discussion of whether section 284 treble damages were available. Although in that case the Fifth Circuit found treble damages unavailable because the district court had determined that the infringement was not willful, the opinion suggested that had the district court found willfulness, there would have been no bar to awarding such an enhancement.

Of course, section 289 contains language precluding a double recovery of profits. This language has been interpreted, however, only to exclude the recovery of certain forms of damages when calculating an infringer's profits, such as royalties, *see id.*, or to permit the reduction of profits through the allocation of costs of fixed expenses. *See Schnadig*, 620 F.2d at 1175. In fact, the treble, or enhanced damages provision of section 284 has been referred to as an independent or permissive provision of that section. *See Sel–O–Rak*, 270 F.2d at 644. Since a trebled award is not provided simply to compensate a plaintiff for his losses, but rather to deter intentional plagerism, interpreting these sections to permit an enhanced award irrespective of which base calculation provision is utilized is consistent with these purposes. Accordingly, the Court holds that a plaintiff who recovers an infringer's profits under section 289 is not precluded from receiving an enhanced award where appropriate.

Defendant raises no further arguments applicable to the issue of an award of treble damages for intentional patent infringement. Although, as noted, a jury's determination that a defendant willfully infringed a plaintiff's patent does not always require an award of increased damages, here, the Court finds this jury's determination of willfulness well taken in view of the evidence before it. Accordingly, and in light of the evidence presented concerning defendant's actions and intent in producing, marketing, and selling its hand-held blender, the Court finds plaintiffs' request for treble damages appropriate. Plaintiffs' request is therefore GRANTED.

■ Plaintiffs also request an award of attorney fees and costs. Section 285 of Title 35 provides that a court may, in an exceptional case, award attorney fees to the prevailing party in patent infringement cases. Similarly, Section 1117 of Title 15, concerning trademark violations such as the jury also here found, provides that a court may award reasonable attorney fees to the prevailing party in an exceptional case. Whether a case is exceptional rests with the court's discretion, even where there has been a finding of intentional infringement. *See Centaur Communications Ltd. v. A/S/M Communications, Inc.*, 830 F.2d 1217, 1229 (2d Cir.1987).

In this Circuit, exceptional circumstances which warrant an award of fees include instances where the losing party either prosecuted or defended the case in bad faith. *Motown Prod., Inc. v. Cacomm, Inc.*, 849 F.2d 781, 786 (2d Cir.1988) (citations omitted). The fee shifting provisions were "designed, in part, 'to afford protection to defendants against unfounded suits brought by trademark owners for harrassment and the like.'" *See id.* (quoting *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Rest.*, 771 F.2d 521, 524 (D.C.Cir.1985) (quoting legislative history)). Presumably, these sections were also designed to protect plaintiffs from frivolous or bad faith defenses. In any event, although Waring was unsuccessful in defending this suit, and, indeed, offered little credible support for many of the defenses it raised, the Court does not consider Waring's efforts to have been conducted in bad faith. Waring was entitled to require plaintiffs to meet their burdens in proving all of the elements of their claims. Litigation is an adversarial process, and Waring should not be penalized simply for utilizing the available tools.

Moreover, although the jury found that Waring willfully infringed plaintiffs' patent, it is not unjust for plaintiffs to bear

their own fees and costs inasmuch as the consequential award of treble damages is, by definition, largely in excess of the actual injury plaintiffs suffered, and presumably adequate to cover counsel fees. *Paper Converting Machine Co. v. Magna–Graphics Corp.*, 788 F.2d 1536, 1537 (2d Cir.1986). Accordingly, plaintiffs' request for counsel fees and costs is DENIED.

## CONCLUSION

For all of the foregoing reasons, defendant's motion for judgments notwithstanding the verdicts or for a new trial are DENIED, and plaintiffs' unopposed motion for an accounting, and for pre- and post-judgment interest is GRANTED pursuant to the terms of this Ruling. As set forth above, plaintiffs' motion for treble damages is also GRANTED and their motion for attorney fees and costs is DENIED. Accordingly, the Clerk of the Court is hereby DIRECTED to ENTER and ISSUE an Amended Judgment in this matter for plaintiffs in the amount of three times $737,948.00, for a total of $2,213,844.00.

SO ORDERED.