**MERCK & CO., INC., Plaintiff,**

v.

**MYLAN PHARMACEUTICALS, INC., Defendant.**

**No. CIV. A. 97–CV–4241.**

United States District Court, E.D. Pennsylvania.

Jan. 12, 2000.

---

Mary B. Graham, Matthew B. Lehr, Lisa B. Baeurle, Julia Heaney, Richard H. Cross, Jr., Richard L. Sutton, MaryEllen Noreika, Rodney Carroll, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, David P. Bruton, Drinker Biddle & Reath LLP, Philadelphia, PA, for Plaintiff.

Margaret S. Woodruff, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, James H. Wallace, Jr., Gregory R. Lyons, Wiley, Rein & Fielding, Washington, DC, for Defendant.

Edward G. Biester, Duane, Morris & Heckscher, Philadelphia, PA, Edgar H. Haug, Frommer, Lawrence & Haug, L.L.P., New York City, for Movant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

This is a motion for attorney fees brought by defendant Mylan Pharmaceuticals, Inc. ("Mylan") against plaintiff Merck & Co., Inc. ("Merck"), following an award of summary judgment in favor of defendant and against plaintiff. Mylan alleges that Merck engaged in vexatious or unjustified litigation techniques in order to delay FDA approval of Mylan's generic compound and increase the burdens on Mylan. Given Merck's alleged dilatory efforts, Mylan contends that the case should be deemed "exceptional" and attorney fees awarded, in the amount of approximately

$1.5 million, in its favor. For the reasons set forth below, the court will deny the Motion for Attorney Fees.

## I. BACKGROUND

In the 1980's, Merck began development of a product intended to provide a more effective treatment of Parkinson's disease. The proposed product involved the controlled release of the two active ingredients already in the market, levodopa and carbidopa. Between 1986 and 1989, Merck sought patent approval from the Patent and Trademark Office ("PTO"), ultimately resulting in the issuance of two patents: the '957 patent and the '755 patent.[1]

In February of 1996, Mylan filed an Abbreviated New Drug Application with the Food and Drug Administration, pursuant to the Hatch–Waxman Act[2], disclosing a generic formulation. On June 24, 1997, Merck filed a complaint in this court alleging that Mylan's generic infringed on both its '755 patent and its '957 patent. The instant action ensued.

Approximately three months after initiation of the suit, Mylan filed a motion for summary judgment of non-infringement with the court. In lieu of responding, Merck submitted an affidavit, pursuant to Federal Rule of Civil Procedure 56(f),[3] seeking to take discovery prior to further summary judgment briefing. The court denied Mylan's summary judgment motion without prejudice in order to permit

Merck to engage in additional discovery before filing a response. On July 8, 1998, Mylan filed a Renewed Motion for Summary Judgment of Noninfringement on the Ground That the Prior Art Precludes Infringement under the Doctrine of Equivalents and a Renewed Motion for Summary Judgment of Noninfringement Because of Prosecution History Estoppel. The court granted both of these motions in August of 1998, *Merck & Co., Inc. v. Mylan Pharmaceuticals, Inc.,* 19 F.Supp.2d 334 (1998), and the Federal Circuit subsequently affirmed the decision. *Merck & Co., Inc. v. Mylan Pharmaceuticals, Inc.,* 190 F.3d 1335 (Fed.Cir.1999).

Mylan now seeks an award of attorney fees and costs incurred in connection with litigation of this suit against Merck. In particular, Mylan claims that Merck asserted frivolous claims and misused the discovery process in order to stonewall Mylan's development of its case. Merck counters that its conduct simply was not "exceptional" for purposes of an award of attorney fees under 35 U.S.C. § 285 (1984).

## II. DISCUSSION

 Section 285 of Title 35 of the United States Code governs the allotment of attorney fees in patent cases as follows: "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.[4] "Attor-

---

**1.** A more complete description of the prosecution history of these patents is set forth is the court's opinion granting Mylan's motions for summary judgment. *Merck & Co., Inc. v. Mylan Pharmaceuticals, Inc.,* 19 F.Supp.2d 334 (E.D.Pa.1998).

**2.** The Hatch–Waxman Act, codified in part at 35 U.S.C. § 271, *inter alia,* allows makers of generic drugs to market generic versions of patented drugs as soon as possible after expiration of the relevant patents, while providing patent holders with limited extensions of patent term in order to recover a portion of the market exclusivity lost during the lengthy process of development and FDA review.

**3.** The text of Federal Rule of Civil Procedure 56(f) reads as follows:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
Fed.R.Civ.P. 56(f).

**4.** The award of attorney fees to a prevailing party under 35 U.S.C. § 285 is a matter unique to patent law and thus, Federal Circuit precedent controls. *Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals Inc.,* 182 F.3d 1356, 1359 (Fed.Cir.1999); *see also Mars Inc. v. Kabushiki–Kaisha Nippon Conlux,* 24 F.3d

ney fees are not to be routinely assessed against a losing party in litigation in order to avoid penalizing a party 'for merely defending or prosecuting a lawsuit.'" *Revlon, Inc. v. Carson Products Co.,* 803 F.2d 676, 679 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1018, 107 S.Ct. 671, 93 L.Ed.2d 722 (1986) (quotations omitted). Indeed, the Federal Circuit has held that a "prevailing alleged infringer should be awarded attorney fees only when it would be unjust not to make such an award." *Rohm and Haas Co. v. Crystal Chem. Co.,* 736 F.2d 688, 692 (Fed.Cir.1984). The determination must be made in light of the totality of the circumstances, *Eltech Sys. Corp. v. PPG Indus., Inc.,* 903 F.2d 805, 811 (Fed. Cir.1990), and party seeking the award bears the burden of proving facts which establish the exceptional character of the case by clear and convincing evidence. *Machinery Corp. of America v. Gullfiber,* 774 F.2d 467, 471 (Fed.Cir.1985).

■ "A finding of such 'exceptional' circumstances does not, however, mandate an award of attorney fees." *Reactive Metals and Alloys Corp. v. ESM, Inc.,* 769 F.2d 1578, 1582 (Fed.Cir.1985). The actual award falls within the discretion of the district judge. *Orthopedic Equipment Co. v. All Orthopedic Appliances,* 707 F.2d 1376, 1384 (Fed.Cir.1983). Findings of exceptional cases resulting in the award of attorney fees have turned on several considerations: willful or intentional infringement, inequitable conduct before the Patent and Trademark Office, vexatious or unjustified litigation, or other misfeasant behavior. *Multiform Desiccants, Inc. v. Medzam, Ltd.,* 133 F.3d 1473, 1481–1482 (Fed.Cir.1998); *see also Beckman Instruments, Inc. v. LKB Produkter AB,* 892 F.2d 1547, 1551 (Fed.Cir.1989) (court must consider misconduct during litigation, willful infringement, or inequitable conduct when determining whether a case is exceptional).

In the case at bar, Mylan sets forth seven different grounds which it alleges support an award of attorney fees:

1. Resisting Mylan's non-infringement summary judgment motion by representing to the court a need for discovery despite the fact that Merck already had in its possession all the material to respond to that motion.

2. Taking needless, expensive discovery to keep the litigation going in order to benefit from the statutory stay of Mylan's FDA approval;

3. Stonewalling Mylan's efforts to streamline this litigation by seeking discovery regarding the *Purepac* litigation involving the same patents and issues;

4. Stonewalling Mylan's efforts to seek discovery of Merck's prosecution of the foreign counterpart patents to show that Merck was misleading the court with positions contrary to its overseas representations on key claim construction issues;

5. Stonewalling Mylan's efforts to obtain Merck's crucial Sinemet CR project notebooks;

6. Stonewalling all discovery on whether Merck had a good faith basis to bring the suit.

7. Alleging in the complaint that it was entitled to relief that is expressly prohibited by statute.

Mylan Pharmaceutical's Memorandum in Support of Its Motion for Attorney Fees Pursuant to 35 U.S.C. § 285 ("Mylan Brief"), at pp. 2–3. Considered as a whole, these claims challenge three areas of Merck's conduct: (a) Merck's use of the discovery process to take needless discovery and delay the case (grounds 1–2); (b) Merck's continued efforts to stonewall Mylan's discovery (grounds 3–6); and (c) Merck's alleged frivolous pleading of a ground for relief (ground 7). None of the

1368, 1371 (Fed.Cir.1994) (when a case involves substantive issues within the exclusive jurisdiction of the Federal Circuit, the law of the Federal Circuit governs).

alleged conduct, however, crosses the threshold into the realm of exceptional circumstances.

### A. *Vexatious Discovery by Merck*

■ Mylan's first contention focuses on Merck's Rule 56(f) affidavit and subsequent service of significant discovery on Mylan. Mylan specifically argues that, at the time it filed its summary judgment motion, Merck had all of the information in its possession necessary to respond to the motion. Stated another way, according to Merck, the Rule 56(f) affidavit was nothing more than an attempt to delay the resolution of the case.

The court disagrees. Merck's request for discovery prior to responding to Mylan's summary judgment motion was fully briefed by both parties and thoroughly considered by the court. Indeed, in denying the summary judgment motion without prejudice, the court recognized that "[a]t the present time, dispositive motions are premature. Due to the technical nature of this action, the record relating to the scientific data and technology involved in the respective products of Merck and Mylan must be further developed." *Merck & Co. v. Mylan Pharmaceuticals, Inc.*, No. 97–4241, Order dated February 20, 1998 (Docket No. 78). As Mylan's summary judgment motion was filed prior to the taking of any discovery, the parties and the court did not have the benefit of such additional information. The subsequent discovery served to educate, not only Merck, but the court on the relevant and complex facts. Whether or not this discovery was ultimately cited by either the parties or the court is immaterial, as it was relevant, *see* Fed.R.Civ.P. 26(b)(1), and it served a valuable role in developing and refining both parties' positions.[5] Further, although the court ultimately ordered summary judgment in favor of Mylan, the case

was not outcome-certain and Merck's arguments were not so unsubstantiated or frivolous to immediately stigmatize any attempt at discovery as "exceptional." A "colorable, albeit weak argument that was not raised in bad faith by the losing party" does not justify the award of fees. *TVI Energy Corp. v. Blane*, 806 F.2d 1057, 1061 (Fed.Cir.1986).

Moreover, the conduct of the litigants must be juxtaposed against the high stakes involved in this dispute. This case concerned a claim undoubtedly worth millions of dollars on an important and profitable patent. Indeed, it is far from unreasonable that a party to such a financially significant lawsuit would want to explore multiple theories of recovery and defense and engage in the discovery necessary to support these theories. To hold otherwise would discourage any plaintiff with a genuine infringement claim from pursuing its case in the face of an early summary judgment motion. Such good faith persistence cannot be deemed to constitute "exceptional" behavior.

### B. *Merck's Responses to Mylan's Discovery*

■ Mylan's second contention turns on Merck's alleged "stonewalling" of Mylan's discovery and other similar litigation tactics. While vexatious litigation tactics alone can act as a basis for an award of attorney fees, "[t]he moving party must make a strong showing of wrongdoing when asking the court to base its award of attorney fees on litigation misconduct." *Graco Children's Products, Inc. v. Century Products Co., Inc.*, No. Civ.A. 93–6710, 1996 WL 421966, *30 (E.D.Pa. July 23, 1996) (citing *Beckman*, 892 F.2d at 1551.) When the alleged misconduct relates to the discovery process, the cases have generally disallowed attorney fees absent a

---

5. Tellingly, Mylan adopts contrary positions. It contends that any discovery was unnecessary and wasteful since the case could have been decided on the information available at the start of the case. Yet, it engaged in substantial and lengthy discovery itself and, as discussed below, now complains that Merck was uncooperative in giving Mylan "crucial" information.

serious breach, such as dishonest responses or failure to comply with discovery orders. *See, e.g., White Consolidated Industries, Inc. v. Vega Servo–Control, Inc.,* 713 F.2d 788, 791 (Fed.Cir.1983) (patent holder's misconduct during discovery did not warrant award of attorney fees to alleged infringer); *Arbrook, Inc. v. American Hosp. Supply Corp.,* 645 F.2d 273, 279 (5th Cir.1981) ("we reject the contention that the plaintiffs' alleged improper conduct during discovery supports a fee award. Assuming such improprieties took place, the proper remedy lies under Fed.R. Civ.P. 37 and not under § 285."); *cf Hughes v. Novi American, Inc.,* 724 F.2d 122, 125 (Fed.Cir.1984) (maintaining an infringement action despite knowledge that the patent is invalid, together with giving false responses to interrogatories justifies an award of attorney fees).

None of Mylan's claims reach the point of vexatiousness. The normal course of complex commercial litigation demands that attorneys object to the production of documents which, in their judgment, are privileged, proprietary or simply irrelevant to the dispute. The conduct alleged by Mylan as grounds for its motion was not so outrageous, out of the mainstream of modern-day litigation techniques or disproportionate to the size and complexity of the case as to warrant an award of attorney fees. There is no allegation that Merck filed false discovery responses, improperly concealed discoverable information or failed to comply with discovery orders. Certainly Merck, like Mylan, may have advanced positions with which the court ultimately disagreed, but Merck's litigation positions in the course of discovery, considered either individually or as a whole, evidence no intent to prolong or delay the case.[6] Because Merck's alleged discovery missteps do not include unethical, vexatious or dishonest tactics, they do not warrant an award of attorney's fees.

### C. Merck's Alleged Frivolous Claim for Relief

Mylan's final argument asserts that, because Merck included in its prayer clause a request for alternative relief for Mylan to disclose previously-undisclosed information to the FDA—a claim for which Merck had allegedly no legal basis—this case is "exceptional" for purposes of an award of attorney fees.[7]

In *Beckman Instruments,* 892 F.2d at 1551, the Federal Circuit noted that "the mere fact that an issue was pleaded and then dropped prior to trial does not in itself establish vexatious litigation." Although the court in that matter affirmed the district court's award of attorney fees on the basis of a generally vexatious litigation strategy, it noted that dropping a claim or asserting a baseless defense was a "somewhat tenuous" ground for deeming a case "exceptional." *Id.; see also Pharmacia & Upjohn v. Mylan Pharmaceuticals,* 182 F.3d 1356, 1361 (Fed.Cir.1999) (absent some showing of vexatiousness, "an improvident allegation of willfulness or resistance to the imposition of collateral estoppel [does not] automatically warrant[ ] an award of attorney fees.").

■ In the case at bar, Merck's inclusion of a request for alternate relief in the

---

**6.** Both parties cite to the court's order of April 15, 1998, in which the court stated as follows: "[o]n two separate occasions, the parties have presented to the court complicated discovery issues, only to have these issues disappear on the eve of a scheduled hearing. The court cautions the parties against filing additional discovery motions without first exhausting all avenues of resolution [inter se]." This note was meant as a caution to *both* parties against either filing premature motions or avoiding the production of information in discovery until faced with court intervention. It was not meant to convey the court's views on either party's particular behavior at the time.

**7.** This alternate form of relief requested as follows: "Alternatively, that Mylan be required to disclose to the FDA any information which it has not previously disclosed relevant to the FDA's consideration of whether Mylan's generic copy is in fact bioequivalent to SINEMET® CR."

prayer clause of its complaint falls far short of meeting the clear and convincing evidence standard necessary to support an award of attorneys fees. Despite bearing the burden of doing so, Mylan has failed to demonstrate that Merck included and pursued this alternate form of relief for vexatious purposes. Moreover, no discovery was taken on the issue and Mylan has not demonstrated that it expended any money defending against this claim. Nor did Mylan attack, during the course of litigation, this alternate form of relief which it now finds so distasteful. As such, the court declines to deem this case "exceptional" purely on the basis of this claim.

## III. CONCLUSION

In sum, the evidence put forth by Mylan does not meet the clear and convincing standard of outrageous or exceptional behavior which warrants an award of attorney fees. Merck's infringement claim, albeit erroneous, was not baseless. Its course of conduct in pursuing the claim was neither vexatious, unusual nor disproportionate to the rather high stakes involved. Finally, Merck's alternate form of relief, whether meritorious or not, cannot alone support an award of one and a half million dollars in attorney fees,[8] especially when the claim was never pursued by either party. As such, Mylan's motion for attorney fees is denied in its entirety.[9]

An appropriate order follows.

### ORDER

**AND NOW**, to wit, this ___ day of **January, 2000**, upon consideration of the Motion for Attorney Fees of Defendant Mylan Pharmaceuticals, Inc.'s, and the Response of Plaintiff Merck & Co., Inc., it is hereby

**ORDERED** that the Motion is **DENIED** in its entirety.

It is so ORDERED.

---

8. Even if the court were to find that this was an exceptional case, the attorney fees claimed are excessively disproportionate to the alleged misconduct. Any fee award to a defendant in an infringement action based on bad faith and litigation misconduct must, in some way, be related to the alleged misconduct. *Beckman*, 892 F.2d at 1553. Mylan's counsel has not even itemized the services rendered to its client, let alone demonstrated that the extraordinary amount of these claimed fees are related to Merck's actions.

9. "We are not satisfied to be right, unless we can prove others to be quite wrong." William Hazlitt, *NoteBooks*, p. 236 (1856).